[Crim. No. 244.   Third Appellate District.—June 1, 1914.]

# THE PEOPLE, Respondent, v. RUBY E. BARTOL, Appellant.

CRIMINAL LAW—RAPE UPON FEMALE UNDER AGE OF CONSENT—AIDING AND ABETTING—SUFFICIENCY OF INFORMATION.—An information setting forth the commission of an act of sexual intercourse with a female under the age of sixteen years, and charging that the defendant did "help, and assist and abet one T. in the perpetration and accomplishment" of such act, is sufficient and brings the defendant within the contemplation of section 31 of the Penal Code.

ID.—WOMAN AS AIDER AND ABETTOR OF RAPE.—While the mother of the prosecutrix could not be the principal, as that term is commonly understood, in the commission of such offense, she might "aid and abet in its commission," and there is substantial evidence to support the verdict of guilty on that ground.

ID.—TESTIMONY OF PROSECUTRIX—SUFFICIENCY TO SUSTAIN CONVICTION. In this prosecution of a woman for aiding and abetting a rape upon her eleven-year-old daughter, the testimony of the girl, while contradictory on material points and almost unbelievable, cannot be said to be inherently improbable or of such a character that the jury had no right to accept it as true, especially in view of substantial corroboration by her younger brother.

ID.—VARIANCE BETWEEN INFORMATION AND EVIDENCE.—There is no variance between the evidence and the allegations of the information.

ID.—CROSS-EXAMINATION OF PROSECUTRIX—RESTRICTION UPON BY COURT. Where the court orders that the prosecutrix shall not be cross-examined further, but the defendant makes no objection to the order and manifests no desire to proceed further with the cross-examination, an appellate tribunal will not hold the restriction improper.

ID.—IMPEACHMENT OF WITNESS—PROPER PROCEDURE—WAIVER.—Where it is sought to impeach a witness by showing prior contradictory statements, the proper course is to ask each witness, the impeaching witness and the witness to be impeached, whether certain statements were made by the latter; but if this course is not pursued and no objection is made to a question to the impeaching witness, but on the contrary the whole conversation is requested, objections thereafter interposed come too late.

ID.—INSTRUCTIONS GIVEN AT REQUEST OF APPELLANT—REVIEW ON APPEAL.—A defendant cannot complain on appeal of instructions given by the trial court at his request.

ID.—AGE OF CONSENT—MISTAKE BY COURT—HARMLESS ERROR.—Where it is undisputed in a rape case that the prosecutrix was not over

twelve years old when the alleged offense was committed, the defendant is not prejudiced by the mistake of the court in assuming that the age of consent is eighteen instead of sixteen years.

ID.—CREDIBILITY OF WITNESS—CONSIDERATION OF POSITION AND INTEREST —INSTRUCTION.—An instruction in a rape case that in weighing the testimony of the defendant it is proper to consider whether "the position and interest of such defendant may not affect her credibility and color her testimony," is objectionable but not reversible error. The vice of the instruction is in calling particular attention to the testimony of the defendant; the principle of the instruction should be given in general terms, and the jury left entirely without suggestion of its application to any particular witness.

ID.—APPEAL—ERROR NOT RESULTING IN MISCARRIAGE OF JUSTICE.— Since the amendment of section 4½ to article 6 of the constitution, it is not sufficient to warrant a reversal in a criminal case to show that error was committed, but, after a review of the whole record, the error must be disregarded and the judgment affirmed, unless the appellate court is of the opinion that the error resulted in a miscarriage of justice. The word opinion is here used in the sense of belief or conviction, not merely suspicion.

APPEAL from a judgment of the Superior Court of Del Norte County and from an order refusing a new trial. John L. Childs, Judge.

The facts are stated in the opinion of the court.

W. A. Wood, E. M. Frost, and Henry L. Ford, for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

BURNETT, J.—We can see no valid objection to the information in this case, which, in its charging part, is as follows: "Ruby E. Bartol is accused by the district attorney of the said county of Del Norte by this information of the crime of rape, committed as follows: That said Ruby E. Bartol, did on or about the 8th day of February, A. D. 1913, at and in said county of Del Norte, state of California, and before the filing of this information, then and there willfully and unlawfully and feloniously help, aid, and assist and abet one Orville Taggart in the perpetration and accomplishment of an act of sexual intercourse, then and there committed and accomplished by the said Orville Taggart with and upon one May Bartol,

who was then and there a female under the age of sixteen years, to wit, of the age of eleven years, and not then and there the wife of the said Orville Taggart.'' The offense of the actual principal, one Orville Taggart, is set out substantially in the language of the statute defining the crime (Pen. Code, sec. 261), and this has frequently been held to be sufficient. To charge that the defendant did ''help, aid and assist and abet'' said Taggart in the perpetration and accomplishment of said act brings her clearly within the contemplation of section 31 of the Penal Code. Of course, she could not be the principal, as commonly understood, in the perpetration of the crime, but, as in the case of any other offense, she might ''aid and abet in its commission,'' or, not being present, advise and encourage its commission.

We cannot say that there is no substantial evidence to support the verdict. While the testimony of the little girl seems almost unbelievable, and she contradicts herself in material points, she did testify that her mother, the defendant, threw her upon the bed and held her hands while said Taggart committed the offense charged. She explained the occurrence so that, giving full credit to her testimony against appellant, the inference of guilt necessarily follows. Strange and startling as her testimony may be, we cannot say that it is inherently improbable or that the jury had no right to accept it as true. In addition we may state that she is substantially corroborated by the testimony of her younger brother. It may be added that some time after the event she was examined by a physician, but, for some reason not disclosed, the physician was not called as a witness. It seems unfortunate that evidence obtained from a physical examination was not produced. This might have constituted an important circumstance in corroboration or refutation of the girl's statements.

We cannot hold that there was a variance between the evidence and the allegations of the information, as contended for by appellant. It is true that in one part of her testimony the prosecutrix testified that her mother was not present when Taggart had intercourse with her, but that she was present and held her hands when one Otto Creitzer perpetrated a similar outrage. But thereafter the record shows the following: ''Q. Did someone take hold of you? A. Yes, sir. Q. Who? A. Mamma. Q. What did she do with you? A. She slung

me on the bed. Q. What did they do after your mother threw you on the bed, May? A. Josie Horn took hold of me. Q. And did someone else take hold of you? A. Orville Taggart. Q. Did they do anything to you? Court (to witness) : Go on and tell if they did anything. A. Otto Creitzer done business with me. Q. And then what happened after that? A. Then Taggart did it.'' She afterward explained that she made a mistake when she said that her mother was not present when Taggart was there, as she misunderstood the question. It was, of course, for the jury to determine whether she was telling the truth.

On cross-examination, the witness testified that she never told any one about the occurrence except that she said to Alice Overton, her cousin, that ''Creitzer done business with me,'' and that she didn't say anything about Orville Taggart, and her examination as a witness was brought to a close as follows: ''Now, May, at the time you told Alice about this, didn't you tell her your mother didn't know anything about it? A. Yes, sir, I did. Court: I don't think I will allow any further questions of this child; if you have any other evidence put it on.'' No objection to this order was made by appellant, nor does it appear that she desired to ask any further questions. The cross-examination seems to have been conducted with the utmost courtesy to all and with unfailing consideration for the feelings of the witness, and it certainly was not unduly protracted. Particularly in a case of this kind should ample opportunity be offered, through the efficaceous method of cross-examination, to test the veracity of the prosecutrix; and if appellant had manifested a desire to proceed further, we should be inclined to hold that the said order of the court operated as an improper restriction of her right.

One A. J. Huffman was called as a witness by the people to impeach Mrs. Violet, who had testified for the defendant. The purpose was to show that Mrs. Violet had made a statement to Mr. Huffman inconsistent with the former's testimony. The proper foundation had been laid when Mrs. Violet was on the stand, and the record shows the examination of Mr. Huffman as follows: ''District Attorney: Mr. Huffman, you sometime within the last few weeks had a conversation with Mrs. Violet in the presence of Mr. Jenkins? A. Yes, sir. Q. And in that conversation did Mrs. Violet make a statement

as to Mrs. Horn having lived at her house?  A. Yes, sir.  Q. And did you ask her with reference to Mrs. Horn?  Attorney for defendant: Now let him state what the conversation was.'' The witness then proceeded to state a part of the conversation, and the attorney for defendant said: ''It seems that this is all out of place.  Mrs. Violet was not under oath at that time. Same objection.''  The objection was overruled and the witness continued with the conversation.  After Mr. Huffman had apparently completed the recital, the attorney for defendant said: ''To impeach a witness by contradictory statement the witness when on the witness stand must be informed of the time, place, and circumstances and the conversation that took place between the parties.  Therefore, this is incompetent for the purpose of impeaching the witness under the rules provided by the codes of this state.  I move to strike out all of the last part of the evidence of this witness upon the ground that it is incompetent, irrelevant and immaterial and does not conform with the requirements of the code for the purpose for which it is offered.''  The motion was denied.  The objection, of course, should have been made before the question was answered.  On the contrary, the appellant had requested the witness to state the conversation and the only objection of any merit whatever was made after the answer had been practically completed, and it may be said also that the attention of the witness Violet was called to the conversation with Mr. Huffman with sufficient particularity to justify her contradiction.  The proper method of impeachment was not pursued, but of this appellant cannot complain because she requested the whole conversation to be given.  When a witness is sought to be discredited in this way his attention must be called to the statements inconsistent with his present testimony with the circumstances of times, places, and persons present, and he must be asked whether he made such statements.  (Code Civ. Proc., sec. 2052.)  If he denies having made them, the statements with the aforesaid circumstances should be related to the impeaching witness and he should be asked if those statements were made.  In other words, the proper and orderly course is to ask each witness whether certain statements were made by the witness who is sought to be discredited.

Accordingly, after his attention had been called to the time, place, and persons present, as in the question to Mrs. Violet, Mr. Huffman should have been asked if she stated that "she woke up some nights and found Mrs. Horn gone?" as that was the question to which Mrs. Violet responded: "I never did tell Mr. Huffman no such thing." But appellant preferred to pursue the other course indicated, so no error was committed of which she can complain.

Upon the question of *alibi*, an instruction was given by the court concluding with this direction: "But it is sufficient if the defendant prove the *alibi* by a preponderance of the evidence, and is not required to prove the same to a moral certainty and beyond a reasonable doubt." Of this appellant says: "We submit that the giving of the foregoing instruction was gross error, and thereby deprived the defendant of her substantial rights to have the jury correctly instructed as to the law." But when we turn to the record, we find the instruction was given at the request of defendant and, of course, she cannot find fault with the court in complying with her request.

Another instruction which is seriously challenged by appellant, we may state, is in the same category, since it was given at her request.

It is clear that defendant was not prejudiced by the mistake of the court in assuming that the age of consent was eighteen instead of sixteen at the time of the alleged commission of the offense. Since the prosecutrix was not over twelve years of age she was within the rule as it was before as well as after the amendment and the erroneous construction could not possibly have done any harm. It seems that the offense was committed February 8 and the amendment in question did not take effect until August, but, in view of the undisputed age of the prosecutrix, that circumstance is of no material consequence here.

The only serious controversy that can arise is suggested by the following instruction: "The jury are instructed that they are the exclusive judges of the evidence and of the credibility of the witnesses and of the weight to be given to their testimony; and they may consider the character and appearance of the witnesses, the consistency and reasonableness of their statement, the interest, if any they may have in the outcome

of the case, and from these may judge and determine as to the credibility, weight, effect, and sufficiency of such testimony. The testimony of an accomplice ought to be viewed with distrust, and in weighing the evidence of the defendant, it is proper for the jury to consider whether the position and interest of such defendant may not affect her credibility and color her testimony, but you are to weigh it fairly in the light of all the surrounding circumstances and give it such credit as you think it ought to receive.'' We have set out the whole of the instruction, but the portion to which appellant particularly objects, as may readily be surmised, is that referring the jury to ''the position and interest of such defendant.''

As sensible men, the jurors would take that circumstance into consideration in weighing the testimony of defendant and they needed no such admonition from the court. And it is perfectly apparent that they had a legal and moral right to consider ''the position and interest of the defendant'' in determining her credibility. That is one of the tests that must be applied to all witnesses. And, of course, without any intimation from the court, the jury understood the ''position'' of defendant and knew her ''interest'' in the outcome of the case. The vice of the instruction is, though, manifestly, in calling particular attention to the testimony of the defendant. The danger of such practice lies in the possibility that the jury may infer that the judge of the court intends to discredit the testimony of the defendant. The principle covered by the instruction should be given in general terms and the jury should be left entirely without suggestion of its application to any particular witness.

A somewhat similar instruction was given in *People* v. *Maughs,* 149 Cal. 262, [86 Pac. 191], as follows: ''When the defendant offers himself as a witness, in determining his credibility, it is proper to take into consideration the consequences, inducements, and temptations which would ordinarily influence a person in his situation.'' After some discussion of the instruction, the court, through Mr. Justice Henshaw, concludes: ''For this reason, therefore, we think the time has come to say that in all future cases which shall arise, and where, after this warning, this instruction shall be given, this court will hold the giving of it to be so prejudicial to the rights of a defendant, secured to him by our constitution and

laws, as to call for the reversal of any judgment which may be rendered against him.''

In *People* v. *Borrego,* 7 Cal. App. 613, [95 Pac. 381], also, it was held that ''it was prejudicial error to instruct the jury that they should consider the situation of the defendant and the manner in which he would be affected by the verdict in determining the weight of his testimony, as being in effect an argument against the defendant upon a matter of fact.''

It is true that, in *People* v. *Ryan,* 152 Cal. 364, [92 Pac. 853], a similar instruction was given and it was held by the supreme court insufficient to justify a reversal of the judgment, the case having been tried before the said opinion in the Maughs case was handed down. The distinction seems to have been based upon the consideration that since the trial judge gave the instruction before it was positively condemned by the supreme court his action was no evidence of a desire on his part to be unfair. We respectfully submit, however, that the important question is not whether the trial judge *desires* to be unfair, but whether as a matter of fact he *has been* unfair and whether by reason of his conduct the defendant has been prejudiced.

It is to be observed that the instruction here is much less objectionable than the one considered in the Maughs case. There the court referred to the ''inducements, consequences, and temptations'' of the defendant. Here it is more nearly a mere commonplace, the ''position and interest'' of the defendant.

Moreover, the situation must be viewed in a different light from that which obtained when the Maughs decision was rendered. Under the recent amendment, No. 4½, to article 6 of the constitution, it is not sufficient to warrant a reversal to show that error was committed, but, after a review of the whole record, the error must be disregarded and the judgment affirmed unless the appellate court is of the opinion that the error resulted in a miscarriage of justice. (*People* v. *O'Bryan,* 165 Cal. 63, [130 Pac. 1042].) ''Opinion'' is probably used in said amendment in the sense of *belief* or *conviction.*

Assuming, then, that error was committed in the giving of said instruction, after considering the entire record, we do not see how it can be held that an appellate court could or should be convinced that a miscarriage of justice resulted. There is

ample evidence to support the verdict. The jury must have believed it to be true. We must accept the verdict therefore as just. The conclusion is that there was no miscarriage of justice. Nor have we any reason to believe that the jury would have had a different belief as to that evidence if said instruction had not been given, or that they would have reached a different result.

It is entirely clear that we cannot say, with any degree of certitude or assurance or even confidence that said conduct of the court resulted in any injustice. There may be a suspicion to that effect. This will always exist when error is committed, but the provision of the constitution requires more than that before a reversal is warranted.

The jury must have been satisfied that the atrocious offense, charged in the information, reaching an almost unparalleled limit of infamy, was committed by the defendant, and, far from holding an opinion that the statement by the court of a truism resulted in a miscarriage of justice, we must believe that the result was not thereby prejudicially affected and that the conclusion of the jury was entirely just.

We think a sufficient showing has not been made to justify an interference with the verdict and the judgment and order are affirmed.

Chipman, P. J., and Hart, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on July 30, 1914.