[Crim. No. 392.  Third Appellate District.—November 21, 1917.]

## THE PEOPLE, Respondent, v. WILLIAM BOJORQUEZ, Appellant.

CRIMINAL LAW—EMBEZZLEMENT—EVIDENCE—INTENT—FINDING OF JURY CONCLUSIVE.—In a prosecution for embezzlement, the jury is not bound to believe the testimony of the defendant as to his intent to steal the property at the time he rented the property, and where there is sufficient evidence to justify a finding that his intention to embezzle was formed after the property came into his possession as a bailee, the finding of the jury is conclusive.

ID.—CREDIBILITY OF DEFENDANT — INSTRUCTION.—An instruction that when the defendant in a criminal action testifies as a witness, his

credibility is subject to the same test as that applicable to other witnesses, and that in determining the credibility of any witness, the jury has the right to consider interest in the result, demeanor, contradiction by other witnesses, and disregard of testimony if false as to any material fact, is not prejudicial, in view of section 4½ of article VI of the constitution.

ID.—CONSEQUENCES OF VERDICT—INSTRUCTION.—An instruction that the jury in arriving at their verdict should not be guided by the consequences to ensue, but that they were to determine the guilt or innocence of the defendant according to their deliberate conviction, and that the law had settled what the effect of that fact should be, is not prejudicial, as calling the jury's attention to the testimony of the defendant and to view his evidence with caution.

ID.—DISREGARD OF SYMPATHY—INSTRUCTION.—An instruction that although the jury might sympathize with those who suffer, they were bound by their oaths to administer judgment according to the law and the evidence, and should not act upon their sympathies or sentiment, is not objectionable.

ID.—LARCENY AND EMBEZZLEMENT — DISTINGUISHING FEATURES — INSTRUCTION.—In a prosecution for embezzlement, where the defendant testified that he had formed the intent to steal the property before it came into his possession as bailee, it is the duty of the court to instruct the jury upon the distinction between larceny and embezzlement as applicable to the evidence, and particularly the testimony of the defendant.

APPEAL from a judgment of the Superior Court of Merced County, and from an order denying a new trial. E. N. Rector, Judge.

The facts are stated in the opinion of the court.

Terry W. Ward, and L. J. Schino, for Appellant.

U. S. Webb, Attorney-General, and J. Chas. Jones, Deputy Attorney-General, for Respondent.

CHIPMAN, P. J.—Defendant was convicted of the crime of embezzlement. He appeals from the judgment of conviction and from the order denying his motion for a new trial. There is no dispute as to the principal facts in the case. The sole question presented as to the evidence is: Did it establish the crime of larceny or that of embezzlement?

Briefly, the evidence was that on the afternoon of December 14, 1916, defendant went to the livery-stable of the prosecut-

ing witness, one Silverose, in the city of Merced, and stated to him that his name was Miles and that he wanted to hire a horse and buggy to go to Atwater, a short distance from Merced. Silverose rented the rig to defendant upon defendant's promise to return the property that evening, for the charge of $1.50. Not having returned the property as promised, Silverose began inquiry the next day, and on December 26, 1916, located it at the livery-stable of one Watson, at Livingston, in the county of Merced, to whom defendant had sold it Defendant testified that he conceived the intention of stealing the property before he went to Silverose's stable. It is stated in his brief: "He practically admitted the taking and carrying away of the outfit and the sale and disposition of the same to Watson, but contended exclusively that he had formed this original intent to secure the possession of the personal property, prior and at the time of the removal of the same from the barn at Merced." The jury were not bound to believe the testimony of defendant as to his intent at the time he rented the property. There was sufficient evidence from which the jury were justified in finding that defendant's intention was to embezzle the property and was formed after it came into his possession under the agreement that it was rented, thereby making him simply a bailee. The implied finding of the jury upon this point is conclusive. (*People* v. *Crane*, 34 Cal. App. 599, [168 Pac. 377].)

Prejudicial error is claimed of the following instruction: "You are instructed as a matter of law that when the defendant testifies as a witness in the case he becomes the same as any witness, and his credibility is to be tested by and subjected to the same test which legally applies to any other witness; and in determining the degree of credibility that shall be accorded to the testimony of any witness, you have a right to take into consideration the fact that he is interested in the result of the prosecution, as well as his demeanor and conduct upon the witness-stand, and during the trial, and you may also take into consideration the fact, if such is the fact, that he has been contradicted by other witnesses, and if you find after considering all the evidence in this case that any witness has willfully and corruptly testified falsely to any material fact, you have a right to entirely disregard his testimony, excepting so far as his testimony is corroborated by other credible evidence."

An instruction of this character is commented upon in *People* v. *Bartol,* 24 Cal. App. 659, 666, [142 Pac. 510], and was held not prejudicial. We think the opinion in that case sufficiently disposes of the objection now urged. Section 4½, article VI, of the constitution has materially restricted the power of the court to grant new trials since the decision in *People* v. *Maughs,* 149 Cal. 262, [86 Pac. 187].

An instruction was given which, in effect, told the jury that they were not to be guided in arriving at a verdict by "the consequences to ensue should you arrive at a particular conclusion. You are to determine the fact of the guilt or innocence of the accused according to your deliberate conviction and the law has settled what the effect of that fact shall be." We do not think this instruction "directs the jury's attention to the testimony of the defendant . . . and to view his evidence with caution," etc., as is urged. The instruction bears no such construction.

We discover no objection to the following instruction: "You are further instructed that, although as men you may sympathize with those who suffer, yet as honest men bound by oath to administer judgment according to law and evidence, you should not act upon your sympathies without any proof; mercy does not belong to you. No question of mercy, sentiment, or anything else resides with you, except the question of whether or not you believe from the evidence, and beyond a reasonable doubt, that the defendant is guilty."

The court gave the following instructions: "I instruct you that in the state of California embezzlement is the fraudulent appropriation of property by a person to whom it has been intrusted; also every person intrusted with property as a bailee who fraudulently converts the same or the proceeds thereof to his own use is guilty of embezzlement. I instruct you that if you find from all the evidence that the defendant hired the personal property described in the information from J. V. Silverose, that he thereupon became a bailee of the property thus hired.

"The distinction between larceny and embezzlement is that in larceny the guilty party does not have the lawful possession of the property and in embezzlement the guilty party has the lawful possession of the property."

It is urged that these instructions do not correctly state the law as applicable to the evidence in this case, as they

35 Cal. App.—23

ignore the defense that defendant formed the intent to steal
the property before he hired it or became bailee. Had the
.court failed to instruct the jury further upon the distinction
between larceny and embezzlement as applicable to the evi-
dence and particularly the testimony of defendant that he
intended to steal the property at the time when it was placed
in his custody, the instruction would be open to criticism.
.A person may hire a horse and become a bailee and at the
same time all the facts taken into consideration, a case of
larceny might be made out. (*People* v. *Smith*, 23 Cal. 280.)
But the court, at defendant's request, we think made the
point quite clear to the jury by the following instruction:

"There is a crime known to the law as larceny. It is a
crime very similar to embezzlement, yet it is entirely distinct
and different from embezzlement.

"Larceny is the felonious stealing, taking, carrying, lead-
ing, or driving away the personal property of another.

"Embezzlement is the fraudulent appropriation of property
by a person to whom it has been intrusted.

"The difference between the crime of larceny and the crime
of embezzlement is this: In larceny the person taking and
driving away the property of another must have at the time
he takes and drives away such property the intent then and
there to steal such property. In embezzlement there must
be no intent to steal at the time the person takes and drives
away the property, but the person must have come into law-
ful possession of such property and thereafter formed the
intent to fraudulently convert it to his own use. When a
person intends from the beginning to steal, and does steal,
the crime is larceny and not embezzlement. Therefore, I
instruct you that if, in this case, the defendant had, at the
very time he took and drove away the property described in
the information, an intent to steal, and did steal it, that he is
not guilty of embezzlement, and your verdict in that event,
.and if you should find the fact so to be, should be not guilty."

The court gave an instruction upon intoxication or drunk-
enness as forming no defense for the commission of crime.
The objection seems to be that it was wholly unnecessary.
There was some testimony as to defendant's condition in re-
spect of sobriety at the time. We do not think that this
feature of the case became material or called for an instruc-
tion. However, the instruction was harmless.

At defendant's request, the court instructed the jury as follows: "A person accused of a crime is not compelled to testify at the trial of the case. The law permits him to remain silent, and if he does elect to remain silent, that circumstance cannot be used against him nor alluded to upon the trial. However, in this case, the defendant has voluntarily gone upon the witness-stand and has testified in his own behalf." The court struck out what followed. This was not error, for the court had in a previous instruction substantially given an instruction covering the matter stricken out.

Attention is called in defendant's brief to the cross-examination of defendant and "to the several objections made to the questions propounded by the district attorney to the defendant while upon the witness-stand in his own defense. They are contained," says the brief, "on pages 53," etc., mentioning consecutively the pages to page 79, inclusive. Such designation of alleged errors is not sufficient to require the reviewing court to consider them.

It is stated in the brief that "the questions propounded by the district attorney as to whether or not the defendant had theretofore been convicted of a felony was highly improper and prejudicial to his substantial rights." It is further suggested that the testimony given by the defendant was substantially the same as that given by the prosecuting witness, and as there was no conflict, "there was no necessity for the impeachment of the defendant." As to this latter statement, defendant overlooks the fact that he testified to his intention to steal the property at the time he received it. If the jury had believed him, the verdict must have been not guilty. It was quite within the right, if it was not the duty of the prosecuting attorney, to meet this statement by the impeachment of the defendant. An examination of the record shows that most of the matters complained of in the pages mentioned are recorded on pages 63 to 69, and occurred out of the hearing of the jury and while they were temporarily excused. The jury being called into court, the defendant was asked as to whether or not he had been previously convicted of a felony and admitted it to be a fact. It was also brought out upon the challenge of defendant's counsel that defendant had been convicted of a felony on more than one occasion. Defendant having invited the proof of a second felony, he has no cause for complaint. Besides, we see no reason why, for purposes

of impeachment, the prosecuting attorney should be limited to inquiry as to one felony.

The judgment and the order are affirmed.

Burnett, J., concurred.

HART, J., Concurring.—I concur in the judgment and in all that is said in the opinion of the presiding justice, but I desire to reiterate disapproval of the instruction first considered in which the court told the jury that, when a defendant testifies as a witness, the jury may, in determining the weight to be attached to his testimony, take into consideration "the fact that he is interested in the result of the prosecution," etc. A similar instruction has been severely condemned by the courts of this state, and I think justly so (see *People* v. *Maughs,* 149 Cal. 253, 262, [86 Pac. 187]; *People* v. *Bartol,* 24 Cal. App. 659, 666, [142 Pac. 510]; *People* v. *Borrego,* 7 Cal. App. 613, [95 Pac. 381]); and the instruction is no less objectionable now than prior to the adoption into the constitution of the provision (section 4½, article VI) that no judgment shall be set aside, or new trial granted, in any case, on any of certain indicated grounds, "unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice." While the instruction in this case is not quite as objectionable as the one denounced in the Maughs case, its vice, as is pointed out in the Bartol case, is, "in calling particular attention to the testimony of the defendant," whose interest in the result of the prosecution is obviously more deepseated than could be that of any other witness. The danger lurking in such an instruction lies in the probability that the jury may infer that the judge, having, out of all the testimony received in the case, selected that of the defendant for such special consideration in his statement of the law to them, is of the opinion that whatever the defendant may testify to in support of his defense should, because of his position in the case, be viewed with suspicion. The instruction should never be given in any case. The section of the constitution above referred to has, since its adoption, rescued many cases from reversal, but it clearly never was designed to change or modify the rules of evidence or to make good

that which has always properly been held to be bad in instructions to juries as to the principles of law which are intended for their guidance in deciding questions of fact.   There is, therefore, no less reason now for the strict observance of the rules of pleading, evidence, or instructions or of any other of the requisites of procedural law in the trial of cases than there was before the introduction of the provision mentioned into the organic law.   Indeed, it is by no means inconceivable that criminal cases may arise which are found to be beyond the reach of the saving grace—the broad and comprehensive mercy—of section 4½ of article VI of the constitution, for the sole reason that such an instruction as the one under consideration is given.   In a very close case upon the facts a reversal for the reason stated might be required.

Thus I have written, not so much because of the present case, which appears to have been, generally speaking, well and fairly tried, but mainly because I believe that, at least so far as criminal cases are concerned, the proposition cannot be too often stated that, while no case should be reversed for trivial, unsubstantial technical errors, still the legal rights of an accused should be, in the trial, just as carefully guarded and preserved now (as the law intends they shall be) as they were prior to the adoption of the section of the constitution above named, and that, therefore, the condemnation of instructions or rulings upon evidence by the courts of last resort should in the trial of such cases be no less heeded now than before said provision was adopted by the people.