[Crim. No. 656. Second Appellate District. Division Two.—July 25, 1919.]

## THE PEOPLE, Respondent, v. MILLS B. SING, Appellant.

[1] SALES—CASH TRANSACTION—PASSING OF TITLE.—Where a sale is for cash, delivery of the goods and payment of the purchase money are concurrent acts, and the vendor, though he has made delivery, supposing that he would immediately receive the purchase price, may reclaim the property from the purchaser if the purchase money be not paid according to the terms of the sale, provided he has not waived the cash payment or been guilty of laches or such conduct as would estop him. If the condition of cash payment is not waived, the title does not pass until the price is paid.

[2] ID.—DELIVERY OF GOODS—WAIVER OF CONDITION—INTENT.—If the seller delivers the goods notwithstanding the failure to fulfill the condition of payment, the question whether the delivery is to be considered a waiver of the condition that payment shall be made before the title passes may depend upon the attendant circumstances; for, whether the condition has been waived or not, is a question of intention.

[3] ID.—ABSOLUTE DELIVERY—PRESUMPTION—REBUTTAL.—An absolute delivery of property to the buyer without a demand of the purchase price is presumptive evidence of a waiver of the condition of present payment and of a willingness to give credit to the buyer. This presumption, however, may be rebutted by the acts and declarations of the parties, or by the circumstances of the case.

[4] ID.—INTENT—QUESTION FOR JURY—EVIDENCE.—Whether the delivery without payment is absolute, so as to pass title, or conditional, so that the title does not pass, depending as it does upon the intention of the parties, the intent that the delivery before payment shall be conditional and not absolute may be inferred from the acts of the parties and the circumstances of the case, and is a question of fact for the jury. An express declaration of an intention to insist upon the performance of the condition is not necessary, but such intention may be inferred from acts and attendant circumstances.

1. When title does not pass though sale is not expressly conditional, note, 120 Am. St. Rep. 869.

Right of purchasers of goods sold for cash but delivered without payment, notes, 13 L. R. A. (N. S.) 697; 29 L. R. A. (N. S.) 709; 47 L. R. A. (N. S.) 173.

42 Cal. App.—25

[5] CRIMINAL LAW—LARCENY—EVIDENCE—INFERENCES.—In this prosecution for feloniously stealing, taking, and hauling away a given quantity of sweet potatoes, the jury was warranted in inferring that the vendors did not intend to waive payment as a condition to the passing of title to the potatoes, that the vendors had no intention to part with title until the cash payment should be made, and that defendant and his associate, by fraud and deception, induced the vendors to believe that an immediate cash payment would be made, and harboring the preconceived intention feloniously to appropriate the potatoes to their own use, obtained the possession fraudulently.

[6] ID.—OBTAINING GOODS BY FRAUD OR TRICKERY.—If a person, with a preconceived design to appropriate the property to his own use, obtains possession of it by means of fraud or trickery, the taking is larceny.

[7] ID. — LARCENY AND FALSE PRETENSES DISTINGUISHED. — In larceny the owner of the thing has no intention to part with his title to the person taking the thing, although he may intend to part with possession, while in false pretenses the owner does intend to part with his title to the thing but it is obtained from him by fraud.

[8] ID. — LARCENY AND EMBEZZLEMENT DISTINGUISHED. — In embezzlement there is no intent, at the time of the taking, to steal or wrongfully appropriate the property, but the accused, having rightfully come into possession, thereafter forms the intent to fraudulently convert it to his own use, while in larceny the person taking the property has, at the time of the taking, an intent to steal the property or to feloniously appropriate it to his own use.

[9] ID. — TAKING GOODS TO ANOTHER COUNTY — JURISDICTION OF OFFENSE.—If, after one has committed the acts which complete the theft, he continues traveling with the goods, still intending to appropriate them to his own use, each step is a new trespass and a fresh larceny, and the possession of the stolen goods by the thief is a larceny in each county into which he carries them; and, under section 786 of the Penal Code, the jurisdiction of the offense is either in the county where the theft was committed, or in any county into which he carries the goods.

---

6. Obtaining possession of property by trick or fraud with intent to steal as larceny, notes, 8 **Ann. Cas.** 287; **L. R. A.** 1916E, 769.

7. Distinction between larceny and obtaining property by false pretenses, note, 2 **Ann. Cas.** 1010.

8. Distinction between larceny and embezzlement, notes, 13 **Ann. Cas.** 882; 11 **A. L. R.** 801.

9. Bringing stolen goods from another jurisdiction as larceny in the forum, note, **Ann. Cas.** 1912A, 392.

[10] ID. — OWNERSHIP OF GOODS STOLEN — ALLEGATION OF IN INFORMA-
TION.—In larceny the name of the owner of the property stolen
is not a material part of the offense charged, but is only required
to identify the transaction so that the defendant, by proper plea,
may protect himself against another prosecution for the same
offense. The essential thing is an averment which shall show
conclusively that the property does not belong to the defendant.

[11] ID.—DIFFERENT ASPORTATIONS—SINGLE ACT.—The fact that the
potatoes were taken and hauled away from the ranch of the
vendor on three different days did not constitute three different
offenses. If different asportations from the same owner are
prompted by one design, one purpose, one impulse, they are a
single act, without regard to time.

[12] ID.—DUTY TO ACQUIT—INSTRUCTIONS—ERROR.—In this prosecution
for the crime of larceny, in view of the fact that the court fully
instructed the jury on the questions of burden of proof and pre-
sumption of innocence, and the further fact that the defendant
neither developed, by evidence on his behalf, nor put forth or sug-
gested any particular or special theory or hypothesis consistent
with his innocence, the refusal to give an instruction that "if
there be any reasonable theory or hypothesis deducible from the
evidence consistent with the innocence of the accused, your sworn
duty compels you to accept such theory or hypothesis and acquit
him," did not constitute prejudicial error.

[13] ID.—PRICE "AGREED" TO BE PAID—QUESTION NOT OBJECTIONABLE.—
In such prosecution a question as to the price the defendant and
his associate had "agreed" to pay for the potatoes was unobjec-
tionable where the witness had previously testified to the partic-
ulars of the negotiations between himself and the defendant and
the latter's associate.

[14] ID.—CONSPIRACY—STATEMENTS OF ASSOCIATE ADMISSIBLE.—Where
the defendant and his associate were conspirators from the moment
they first visited the ranch from which they secured the potatoes
to the time when the last potatoes were sold or otherwise dis-
posed of by them, the evidence of the declarations by, and acts
of, the associate were admissible on the prosecution of the de-
fendant.

[15] ID.—PRIMA FACIE PROOF OF CONSPIRACY NOT ESSENTIAL.—Where
the facts from which the conspiracy is to be inferred are so
intimately blended with other facts going to constitute the crime
that it is difficult to separate them, it is not essential to the intro-
duction of evidence of the acts and declarations of one of the
conspirators that evidence should first be introduced to establish
*prima facie*, in the opinion of the court, the fact of conspiracy.

15. Evidence of conspiracy to commit crime as admissible where
conspiracy is not charged in indictment, note, 5 Ann. Cas. 984.

APPEAL from a judgment of the Superior Court of Los Angeles County, and from an order denying a new trial. Frank R. Willis, Judge. Affirmed.

The facts are stated in the opinion of the court.

Paul W. Schenck and Richard Kittrelle for Appellant.

U. S. Webb, Attorney-General, and Joseph L. Lewinsohn, Deputy Attorney-General, for Respondent.

FINLAYSON, P. J.—Defendant was convicted of the crime of grand larceny. He appeals from the judgment of conviction and from an order denying his motion for a new trial.

The information was filed in, and the action tried by, the superior court of Los Angeles County. It is charged in the information that defendant and one St. Clair, "on or about the first day of September, 1918, at and in the county of Los Angeles, . . . did . . . feloniously steal, take, and haul away 252 sacks óf sweet potatoes, . . . the personal property of N. Namekawa, Y. Takahaihi, and K. Yasunaga."

Briefly, the evidence discloses the following facts: The three persons whose property defendant is alleged to have stolen are Japanese. These three Japanese were partners, farming on a ranch near Anaheim, in Orange County. On August 31, 1918, defendant, who is a Chinaman, and St. Clair went to the ranch of the Japanese, introduced themselves, and told one of the Japanese that they wanted to buy some sweet potatoes, for which they would pay $3.50 a hundred pounds. The Japanese told them he would sell them the potatoes if they would pay cash, and asked them if they were ready to pay the cash that day, telling them it would take about three days to dig the potatoes. In reply, defendant and St. Clair told the Japanese that they did not have the cash with them that day, but to dig the potatoes nevertheless, and they would bring the cash the next day. That day defendant and St. Clair agreed to take 150 sacks of a hundred pounds each, at $3.50 per hundred pounds, agreeing to make a cash payment. The next day, September 1st, defendant returned to the ranch with a truck and driver. The Japanese who, the day before, had

made the agreement for the sale of the potatoes, asked defendant if he had brought the cash. Defendant replied that he had not, but that his company was a "big company," and that he would bring the cash the next day. That day, September 1st, defendant took away in the truck and hauled to the White Express Garage in Los Angeles a little more than one hundred sacks. The next day, September 2d, defendant again visited the ranch with a truck, and hauled away, to the same garage in Los Angeles, about seventy sacks of potatoes. The following day, September 3d, St. Clair came to the ranch with a truck and driver and hauled away, to the same garage in Los Angeles, seventy-six sacks. Upon this occasion the Japanese asked St. Clair if he had brought the money. St. Clair said that he had not; whereupon the Japanese asked him why he had not. St. Clair replied, as defendant previously had, that his company was a "very big company." He then asked the Japanese to accompany him to Los Angeles, saying: "I will pay right away." Altogether, 252 sacks of potatoes were hauled away from the ranch near Anaheim to the garage in Los Angeles. On the third trip, the occasion when St. Clair caused the seventy-six sacks to be hauled away, the Japanese who had conducted the negotiations accompanied St. Clair to Los Angeles, arriving at the garage about 1 o'clock on the morning of September 4th. The Japanese remained outside the door of the garage until after daylight, watching the potatoes. Defendant previously had given this Japanese a card on which was written: "Henry St. Clair Produce Co., 1807 East Seventh Street," and under this: "112 West Ninth Street. Main Office, Room 235; Telephone 10175." When St. Clair and the Japanese arrived at the garage early in the morning of September 4th, the former told the Japanese to go to the office of the company in the morning and he would receive his money. About 8 o'clock in the morning of September 4th, the Japanese went to the office of the supposed "big company," as described on the card given him by defendant, but there was no office there. About an hour and a half later he returned to the garage only to discover that, in the meantime, the potatoes had been taken away. Two days later some of the potatoes were found in the stall of a produceman in a market in Los Angeles. This produceman testified that he had bought two truckloads of

potatoes from defendant at $3.25 a hundred pounds. At this time the market value in Los Angeles was four dollars per hundred pounds. There is evidence to justify the inference that defendant and St. Clair sold the balance of the potatoes to other producemen, after they had caused them to be hauled to Los Angeles.

That the evidence shows the case to be, not larceny, but some other crime, such as false pretenses or embezzlement, is a proposition seriously urged upon us by appellant. With this contention we cannot agree. That the crime was larceny, and none other, is clearly established by the evidence.

Throughout all the dealings, the Japanese who carried on the negotiations with defendant and St. Clair was particular to emphasize the fact that the sale was to be strictly a cash transaction. [1] Where a sale is a cash sale, delivery of the goods and payment of the purchase money are concurrent acts, and the vendor, though he has made delivery, supposing that he would immediately receive the purchase price, may reclaim the property from the purchaser if the purchase money be not paid according to the terms of the sale, provided he has not waived the cash payment or been guilty of laches or such conduct as would estop him. If the condition of cash payment is not waived, the title does not pass until the price is paid. (*Blackwood* v. *Cutting Packing Co.*, 76 Cal. 212, [9 Am. St. Rep. 199, 18 Pac. 284]; 24 R. C. L., p. 23.) [2] It frequently happens that the seller will deliver the goods notwithstanding the failure to fulfill the condition of payment. In such cases, the question whether the delivery is to be considered a waiver of the condition that payment shall be made before the title passes may depend upon the attendant circumstances; for, whether the condition has been waived or not is a question of intention. [3] An absolute delivery of property to the buyer without a demand of the purchase price is presumptive evidence of a waiver of the condition of present payment and of a willingness to give credit to the buyer. This presumption, however, may be rebutted by the acts and declarations of the parties, or by the circumstances of the case. [4] Whether the delivery without payment is absolute, so as to pass the title, or conditional, so that the title does not pass, depending as it does upon the intention of the parties, the intent that the delivery before

payment shall be conditional and not absolute may be in-
ferred from the acts of the parties and the circumstances
of the case, and is a question of fact for the jury. An
express declaration of an intention to insist upon the per-
formance of the condition is not necessary, but such in-
tention may be inferred from acts and the attendant
circumstances. (*Osborn* v. *Gantz,* 60 N. Y. 542; *Parker*
v. *Baxter,* 86 N. Y. 593.) **[5]** In the present case the
jury was warranted in inferring that the Japanese did not
intend to waive payment as a condition to the passing of
title to the potatoes. All his acts, coupled with the evident
purpose of defendant and St. Clair to obtain possession
of the potatoes by fraud and deceit—leading the Japanese
to believe at each successive step in the transaction that
a cash payment would be made immediately—clearly in-
dicate that it was not the intention of the vendors to pass
the title to the potatoes, or to permit their resale by defend-
ant or St. Clair prior to the payment of the cash price
agreed upon. The title remaining in the three Japanese
partners, the potatoes were subject to larceny. **[6]** If a
person, with a preconceived design to appropriate the prop-
erty to his own use, obtains possession of it by means of
fraud or trickery, the taking is larceny. (17 R. C. L.,
p. 13; *People* v. *Rae,* 66 Cal. 423, [56 Am. Rep. 102, 6
Pac. 1].)

There is no foundation for the claim that the crime was
that of obtaining goods under false pretenses. **[7]** In
larceny, the owner of the thing has no intention to part
with his title to the person taking the thing, although
he may intend to part with possession. In false pretenses,
the owner does intend to part with his title to the thing,
but it is obtained from him by fraud. (*People* v. *Delbos,*
146 Cal. 734, [81 Pac. 131]; *People* v. *Rial,* 23 Cal. App.
713, [139 Pac. 661].) Here there was evidence justifying
the inference that the Japanese had no intention to part
with title until the cash payment should be made; also
that defendant and St. Clair, by fraud and deception, in-
ducing the Japanese to believe that an immediate cash
payment would be made, and harboring the preconceived
intention feloniously to appropriate the potatoes to their
own use, obtained the possession fraudulently.

**[8]** Nor was the crime that of embezzlement; for, the
title remaining in the Japanese, defendant and St. Clair,

as the evidence shows, not only obtained possession by fraud and deceit, thereby inducing the owners to make delivery, but, before delivery was made to them, they had formed the preconceived design to appropriate the potatoes to their own use after they should have succeeded in inducing the Japanese to part with the manual possession. In embezzlement, there is no intent, at the time of the taking, to steal or wrongfully appropriate the property; but the accused, having rightfully come into possession, thereafter forms the intent to fraudulently convert it to his own use. In larceny, the person taking the property has, at the time of the taking, an intent to steal the property or to feloniously appropriate it to his own use. (*People* v. *Bojorquez,* 35 Cal. App. 350, [169 Pac. 922]; *People* v. *Smith,* 23 Cal. 280.)

[9] It is claimed that the superior court of Los Angeles County did not have jurisdiction to try the case. Appellant contends that the crime was wholly begun, ended, and consummated in Orange County, and hence argues that section 781 of the Penal Code, which gives jurisdiction to either court where the crime is committed partly in one county and partly in another, is inapplicable. It is also urged by appellant that the court did not acquire jurisdiction under section 786 of the Penal Code, because the information charges the crime to have been committed in Los Angeles County, instead of charging that it was committed in Orange County and the potatoes then brought into Los Angeles County. Section 786 of the Penal Code provides that "when property taken in one county by burglary, robbery, *larceny,* or embezzlement, has been brought into another, the jurisdiction of the offense is in either county."

It doubtless is true that the crime of larceny was committed when defendant, with intent feloniously to appropriate the potatoes to his own use after he should have obtained their possession, secured the possession in Orange County through the fraud and deceit then and there used to induce the Japanese to make a delivery to defendant or to his confederate St. Clair, or to the truck driver who was employed by them to haul the potatoes to Los Angeles. But even so, a new larceny was committed in Los Angeles County—the larceny with which the defendant was charged in the information. If, after one has done what completes

the theft, he continues traveling away with the goods, still intending to appropriate them to his own use, each step is a new trespass and a fresh larceny. So that the possession of goods stolen by the thief is a larceny in each county into which he carries them. The legal possession still remaining in the true owner, every moment's continuation of the trespass and felony amounts, in legal contemplation, to a new caption and asportation. (1 Bishop's New Criminal Procedure, sec. 59; 17 R. C. L., pp. 45, 46; *People* v. *Staples,* 91 Cal. 27, [27 Pac. 523].) In legal contemplation, the crime of larceny is committed in both counties, and the thief may be prosecuted and punished in either. (*People* v. *Mellon,* 40 Cal. 648, 654; *People* v. *Scott,* 74 Cal. 94, 96, [15 Pac. 384]; *People* v. *Tyree,* 21 Cal. App. 701, [132 Pac. 784].) This principle of law is elementary; and the information may, as here, charge the commission of the larceny in the county into which the goods have been taken, and the first larceny, though it is not alleged in the information, may be given in evidence.

Appellant, with much confidence, asserts that *People* v. *Prather,* 134 Cal. 386, [66 Pac. 483, 724], is in irreconcilable conflict with these views. That case, recognizing that the crime of larceny is committed in both counties, when a thief, having taken property by larceny in one county, brings it into another, the intent to steal continuing, simply holds that the prosecutor for the county into which the goods are brought may pursue either one of two courses: (1) He may lay the venue in the county into which the property is brought, charging the crime to have been committed in that county, thus relying upon the larceny that, in legal contemplation, is committed therein; or (2) he may charge the larceny that was committed in the county where the first felonious taking occurred, and then allege that the stolen property was brought into the county in which the crime is prosecuted. It was the second of these two possible courses that was pursued by the prosecutor in the Prather case. Where the intent still to steal the property does not continue when the property is brought into the county where the prosecution is had, the information must charge the larceny that was committed in the county where the property was originally stolen, and then allege that the property was brought into the

county where the prosecution is had. In such a case, jurisdiction in the county into which the goods are brought can only be by reason of the provision contained in section 786 of the Penal Code. But where, as here, the intent to steal continues after the goods are brought into the second county, the larceny may be charged to have been committed in that county. That this view of the law is fully recognized by the court in the Prather case, is established by the fact that there the court, after quoting from Bishop, says: "This principle of law is elementary, and involves the proposition that a new larceny is committed in every county to which the thief takes the property; *and the correct information in such a case should charge the commission of the crime of larceny in the county where the person is to be prosecuted.* Under such circumstances, the first larceny is a mere matter of evidence, and should not be alleged." (134 Cal. 388, [66 Pac. 484]. Italics ours.) In the Prather case the prosecution was based upon the original larceny committed in Yolo County, and the jurisdiction of the court in Sacramento County was based upon section 786. Here the prosecution is not based upon the original larceny committed in Orange County, but upon that which, in legal contemplation, was subsequently committed in Los Angeles County, and jurisdiction of the Los Angeles court is in no wise dependent upon section 786, but exists because, in the eyes of the law, a larcenous taking was had in the latter county.

[10] The information charges that defendant did feloniously steal and take away 252 sacks of potatoes, "of the personal property of N. Namekawa, T. Takahaihi, and K. Yasunaga." Appellant claims that there is no evidence that these three owned the potatoes. N. Namekawa, one of the three Japanese named in the information as the owners of the potatoes, testified that he and the other two were partners; that he was engaged in farming on a ranch near Anaheim; that his two partners were farming with him; that they were raising sweet potatoes; and that he carried on all the negotiations with defendant and St. Clair for the sale of the potatoes. This was sufficient evidence of the ownership as alleged, even though the witness, as might be expected of an ignorant person, frequently referred to the potatoes as "my potatoes," and to the ranch as "my

ranch." Moreover, the variance, if any there was, was not fatal. It would have been fatal at common law; but in this state it is provided by statute—section 956 of the Penal Code—that "when an offense involves the commission of . . . a private injury, and is described with sufficient certainty in other respects to identify the act, an erroneous allegation as to the person injured . . . is not material." In larceny, the name of the owner of the stolen property is not a material part of the offense charged. It is only required to identify the transaction, so that the defendant, by proper plea, may protect himself against another prosecution for the same offense. The essential thing is an averment which shall show conclusively that the property does not belong to the defendant. (*People* v. *Nunley,* 142 Cal. 105, [75 Pac. 676].) Defendant and St. Clair, having been charged with feloniously stealing and taking away 252 sacks of sweet potatoes, the property of the three Japanese named in the information, the larceny was identified with sufficient certainty to enable defendant, by proper plea, to protect himself against another prosecution for the same offense, even though it should appear that the potatoes were owned by but one of the three.

[11] Because part of the potatoes were taken and hauled away from the ranch of the Japanese on September 1st, and part on September 2d, and the balance on September 3d, appellant claims that there were three separate and distinct offenses, and that the court should have granted his motion to compel the prosecution to elect one of the three offenses as that upon which it would rely for a conviction. The transaction in which the potatoes were taken was a continuous one. Appellant and his confederate St. Clair, when they first went to the ranch of the Japanese and negotiated for the potatoes, evidently designed to obtain possession of the 252 sacks by fraud and deceit, i. e., by fraudulently pretending that the sale was a *bona fide* cash sale, and by leading the Japanese to believe that the potatoes, notwithstanding their delivery, would be immediately paid for and would not be resold until cash payment should be made as represented by them. It is evident that, from the beginning, defendant and St. Clair intended to appropriate the potatoes to their own use after having obtained the possession fraudulently. Although the deliveries to defendant

and St. Clair and the hauling away were distinct acts, still they were continuous. The whole transaction was one continuous proceeding, instigated by one impulse and one purpose. Appellant and his confederate having embarked upon a scheme to appropriate the potatoes to their own use after they should have induced the Japanese to deliver possession under the impression that they would immediately receive cash payment, and having pursued this scheme until it was effectuated, it is immaterial that it required a number of days to consummate it. All the potatoes having been taken in pursuance of one purpose, they were, legally speaking, taken at the same time. The law is that if the different asportations from the same owner are prompted by one design, one purpose, one impulse, they are a single act, without regard to time. (*Carl* v. *State,* 125 Ala. 89, [28 South. 505]; *Flynn* v. *State,* 47 Tex. Cr. 26, [83 S. W. 206]; *Ex parte Jones,* 46 Mont. 122, [126 Pac. 929]; *Wilson* v. *State,* 70 Tex. Cr. 631, [158 S. W. 512]; *State* v. *Gibson,* 37 Utah, 330, [108 Pac. 349]; *State* v. *Mandich,* 24 Nev. 336, [54 Pac. 516]; 25 Cyc. 61.)

[12]  Complaint is made that the court refused to give an instruction as follows: "If there be any reasonable theory or hypothesis deducible from the evidence consistent with the innocence of the accused, your sworn duty compels you to accept such theory or hypothesis and acquit him." This instruction might well have been given, but its refusal was not prejudicial error. Defendant offered no evidence. He neither developed, by evidence on his behalf, nor, so far as the record before us shows, put forth or suggested any particular or special theory or hypothesis. In every criminal case, where the defendant has interposed the plea of "not guilty," the general theory of innocence is, of course, adopted by him. But as to this general theory, the court's instructions covered all that appellant was entitled to ask. The court defined larceny, grand and petit; instructed the jury that, to justify a conviction, the prosecution must establish, beyond a reasonable doubt, the crime as charged in the information; and defined "reasonable doubt," by giving the oft-approved language of Chief Justice Shaw in the Webster case. (5 Cush. (Mass.) 295, [52 Am. Dec. 711].) The jurors were told that "a defendant in a criminal action is presumed to be innocent until the contrary is

proven''; that ''in case of a reasonable doubt whether his guilt is satisfactorily shown, he is entitled to an acquittal''; that ''if, after a consideration of the whole case, any juror should entertain a reasonable doubt of the guilt of the defendant, it is the duty of such juror entertaining such doubt not to vote for a verdict of guilty''; that ''the burden of proof is upon the prosecution''; that ''every person is presumed to be innocent until he is proven guilty''; and that ''if, upon such proof, there is a reasonable doubt remaining, the accused is entitled to the benefit of it by an acquittal.'' For these reasons we are satisfied, after an examination of the entire case, including the evidence, that the refusal to give the requested instruction did not result in a miscarriage of justice.

We find no prejudicial error in the admission or rejection of evidence. Appellant bases several of his objections upon theories of the law that we already have disposed of contrary to his contentions. [13] A number of objections to questions were made upon the ground that they called for the conclusion of the witness; as, for example, a question asked of the Japanese witness as to the price the defendant and St. Clair had *"agreed"* to pay for the potatoes. This, like other similar questions, was unobjectionable, for the witness had previously testified to the particulars of the negotiations between himself and appellant and St. Clair. [14] Appellant objects that evidence of certain declarations made by, and acts of, St. Clair was hearsay. But the entire record warrants the inference that appellant and St. Clair were conspirators from the moment when they first visited the Japanese ranch to the time when the last potatoes were sold or otherwise disposed of by them. What St. Clair said or did in furtherance of the common purpose during the life of this conspiracy was, of course, admissible. [15] Where, as here, the facts from which the conspiracy is to be inferred are so intimately blended with other facts going to constitute the crime that it is difficult to separate them, it is not essential to the introduction of evidence of the acts and declarations of one of the conspirators that evidence should first be introduced to establish *prima facie*, in the opinion of the court, the fact of conspiracy. (*People* v. *Fehrenbach,* 102 Cal. 394, [36 Pac. 678].)

What we have said thus far disposes of every point made in support of the appeal that is worthy of discussion.

Judgment and order affirmed.

Sloane, J., and Thomas, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on September 22, 1919.

All the Justices concurred, except Melvin, J., who was absent.