[No. 1541.]

# STATE OF NEVADA, RESPONDENT, v. DANIEL MANDICH, APPELLANT.

CRIMINAL LAW—LARCENY—POSSESSION OF STOLEN PROPERTY—EVIDENCE. In prosecutions for larceny, the fact that the stolen property is, recently after the theft, found in the possession of the defendant, can always be given in evidence against him.

IDEM—IDEM—IDEM—PROVINCE OF JURY. The strength of the presumption of guilt, raised by the possession of property recently stolen, is for the jury to determine.

IDEM—IDEM—IDEM—IDEM. It is the province of the jury to determine whether the possession is recent enough to raise the presumption.

IDEM—IDEM—IDEM—PRESUMPTION OF FACT. The presumption arising from possession of stolen property is a presumption of fact.

IDEM—IDEM—IDEM—EXPLANATION OF DEFENDANT. Whether the explanation of one found with property, recently stolen, in his possession is reasonable or otherwise, is for the jury.

IDEM—IDEM—SUCCESSIVE LARCENIES. Where there are successive larcenies, each complete and distinct, and not constituting one continuing transaction, the mere retention and possession by the thief of the fruits of his petit larcenies will not make him guilty of grand larceny, though the aggregate value of the stolen property exceeds fifty dollars.

IDEM—IDEM—IDEM—CONTINUING TRANSACTION. Several successive larcenies do not constitute different offenses where there is a continuing transaction, and the defendant may be convicted for the final carrying away.

IDEM—IDEM—IDEM—GRAND LARCENY. Where accused took cyanides from a mine from time to time, in small quantities, to avoid detection, and then carried them away, it was a continuous transaction, and he was properly convicted for the final asportation, the value of the cyanides being in excess of fifty dollars.

IDEM—INSTRUCTION—CIRCUMSTANTIAL EVIDENCE—DEGREE OF PROOF—REASONABLE DOUBT. The court instructed the jury as follows: "You are instructed that, in order to convict the defendant, you must not only be satisfied beyond a reasonable doubt that the property described in the indictment was stolen from the April Fool Gold Mining and Milling Company, but that the defendant either stole the property, or that he aided or encouraged the theft, and, if circumstances are alone relied on by the prosecution, then each circumstance must be proved beyond a reasonable doubt. And all the circumstances so proved must be such that the defendant could not be innocent in the light of their existence": *Held*, that that portion of the instruction reading "all the circumstances so proved must be such that the defendant could not be innocent in the light of their existence," suggests that degree of certainty which would exclude the possibility of the innocence of the accused, the law requiring no such certainty.

IDEM—CIRCUMSTANCES—REASONABLE DOUBT. If the circumstances, all taken together, exclude to a moral certainty every hypothesis but the single one of guilt, and establish that one beyond a reasonable doubt, they are sufficient.

APPEAL from the District Court of the State of Nevada, Lincoln county; *G. F. Talbot*, District Judge:

Daniel Mandich was convicted of grand larceny, and he appeals. Affirmed.

The facts sufficiently appear in the opinion.

*Sawyer & Sawyer* and *T. J. Osborne*, for Appellant:

I. We submit that the court should have instructed the jury to acquit at the close of the case for the state, as the *corpus delicti* was not proven by any tangible evidence, and it was shown by the state's witnesses that the defendant had obtained possession of the cyanides in a straightforward and honest manner, as explained at the first opportunity offered him, and his good character was established by all the witnesses of the prosecution. (*State* v. *Waterman*, 1 Nev. 559; *State* v. *Stewart*, 6 Nev. 175; *State* v. *Clifford*, 14 Nev. 72; *State* v. *Jones*, 19 Nev. 366; *State* v. *Gray*, 23 Nev. 303; *People* v. *Antonio*, 27 Cal. 407; *People* v. *Hurley*, 60 Cal. 76; 12 Am. & Eng. Ency. of Law, 876, *et seq.*; 64 Cal. 253.)

*F. R. McNamee*, District Attorney, and *James R. Judge*, Attorney-General, for Respondent:

I. The court did not commit error in refusing the defendant's request to instruct the jury, when the state rested its case, to render a verdict of acquittal. The testimony then before the jury clearly showed that the property found in the possession of the defendant, for the larceny of which he was indicted, was the property of the April Fool Gold Mining and Milling Company, and, while the mere fact that possession of stolen property is not of itself sufficient to authorize conviction, it was such a circumstance in connection with the conduct of the defendant while in the possession of the property, and his statements of the manner in which possession thereof was obtained, as testified to by the witnesses for the state, as made it proper matter for consideration by the jury. (*State* v. *En*, 10 Nev. 277; *People* v. *Ah Ki*, 20 Cal. 178; *People* v. *Gill*, 45 Cal. 286; *People* v. *Mitchell*, 55 Cal. 236; *People* v. *Clough*, 59 Cal. 441; *People* v. *Velarde*, 59 Cal. 463.)

II. The ruling of the court denying defendant's motion to

set aside the verdict of the jury, and grant a new trial, was correct. No reasonable explanation was offered by defendant as to the manner by which he became possessed of the stolen property. The possession of stolen property, after the same has been stolen, raises a presumption that the person having the possession is the thief, and is a fact from which the jury may find the possessor guilty if he be charged with the larceny. (*State* v. *Bruin,* 34 Mo. 537; *State* v. *Jordan,* 69 Iowa, 506; *People* v. *Kelly,* 28 Cal. 423; *Smith* v. *People,* 103 Ill. 82; 57 Ga. 502; *Commonwealth* v. *Deegan,* 138 Mass. 182; *State* v. *Butterfield,* 75 Mo. 297; 73 Mo. 608.)

By the Court, BONNIFIELD, J.:

It was charged by the indictment that on or about the 25th day of February, 1898, in Lincoln county, State of Nevada, the defendant, Daniel Mandich, did unlawfully and feloniously steal, take and carry away, thirty-one pounds of gold and silver cyanide product, of the value of twelve hundred dollars, of the property of the April Fool Gold Mining and Milling Company, a corporation. The defendant was found guilty, and a judgment of imprisonment for the term of two years in the state prison was entered against him.

This appeal is taken from the judgment and order of the court denying his motion for new trial.

Several grounds of the appeal are presented and urged in argument by defendant's counsel, which are to the effect: First, that the evidence is insufficient to justify the verdict; second, that the verdict is against law; third, that the court erred in refusing to give certain instructions presented by the defendant.

*The Evidence:* The evidence is to the effect and shows that the April Fool Gold Mining and Milling Company, a corporation, was engaged at Delamar, in Lincoln county, Nevada, in the reduction of gold and silver ores from its mine by the cyanide process from July, 1897, to February, 1898, and afterwards; that during the time from July to September, 1897, the company missed from its reduction works, at different times, small quantities of the cyanide product; that in said September it missed ten pounds of said product, and smaller quantities from time to time thereafter,

and that said product missed as aforesaid was stolen; that in the latter part of February, 1898, the defendant was found in Salt Lake City, several hundred miles distant from Delamar, with thirty-one pounds of cyanide product in his possession, of the value of twelve hundred dollars, and of the property of said company, which he was trying and offering to sell.

The defendant in his testimony gave the following account of how he came into the possession of the property, to wit:

"On the 9th day of last February, a man came to my store (in Delamar) about 9 o'clock in the evening, and asked if I wanted to buy any bullion. He said his name was Green, and that he had a mine leased at El Dorado canyon, and that he brought the bullion from there. I told him I would look at it, and he went away and soon came back with a flour sack, in which was what he called the bullion. I looked at it, and told him it was not bullion. He said it was rich, and I could get it assayed. I tried to get samples of it assayed in Delamar the following day, but could not, and then I told Green I would send samples to Salt Lake to McVicker. Green said that would be better, as then we could get correct returns. I sent samples to McVicker, at Salt Lake, for assay, and got returns. Green had been in several times before they got back. He was a man of light complexion, and was dressed then in a red sweater and something of a broad hat—a soft hat—during the time I saw him. He came in the day I got the returns, and I offered him five hundred dollars for the stuff. I did not know it was cyanide product until I went to Salt Lake, and was having it assayed. Green wanted eight hundred dollars for the material. We finally agreed on six hundred and fifty dollars, and I told him if I got more than seven hundred dollars, when I took it to Salt Lake, I would make it right with him."

When confronted by Frank Wilson, the president of said company, at Salt Lake City, the defendant gave substantially the same account as above of his alleged transaction with Green, except that, in his conversation with Wilson, he also stated that he had two hundred and fifty dollars of his own money, and borrowed the balance he paid Green. In the

same conversation he stated that he had three hundred and fifty dollars of his own, and then borrowed the balance.

It appears from the evidence that witness Jame Jacks met the defendant on the 27th or 28th day of February at Salt Lake, and he stated to witness that he was going to Klondike; that on the 4th or 5th of March witness met defendant, and he stated to witness that he was going to return to Delamar. This last statement was after the company claimed the property.

It likewise appears that the defendant stated to W. J. Dooley, secretary of said company, that said Green had been in his (defendant's) place of business at Delamar off and on from the 9th to the 25th day of February, and that he could recognize Green if he saw him; that the officers of the company had Green arrested, and took the defendant to the secretary's office into the presence of Green, and asked him if Green was the man from whom he received the cyanides; that the defendant, on being brought face to face with Green, hesitated, and finally said that he was not the man. It also appears that Green fully answered to the description given by the defendant.

There is some evidence to the effect that the defendant made no effort to find the man from whom he alleges he bought the cyanides.

It is argued by counsel that the evidence is insufficient to support the verdict, in that the possession of the cyanides was the only circumstance proven to connect the defendant with the theft; that it was not shown that, when they were found in his possession, they had been recently stolen; that the defendant gave a full and reasonable account of how he became possessed of the property at the first opportunity, which account showed that he came into the possession thereof honestly, and that, his reputation for truth and honesty being good, he was entitled to an acquittal.

In prosecutions for larceny the fact that the stolen property is, recently after the theft, found in the possession of the defendant, can always be given in evidence against him. The strength of the presumption which it raises against the accused depends upon all the circumstances surrounding the case, and is for the jury to determine.

In a well-considered case, and upon an elaborate review of authorities, it was held that: " It is a presumption established by no legal rule, ascertained by no legal test, defined by no legal terms, measured by no legal standard, bounded by no legal limits. It has none of the characteristics of law. Whether it be found by the judge or the jury, the judge and the jury must be equally unconscious of finding in it any semblance of a legal principle, however much good sense may appear in the result arrived at. Being a presumption of fact, it should, according to our practice, be drawn by the jury, and not by the court." (*State* v. *Hodge*, 50 N. H. 510.) It is the province of the jury to determine whether the possession is recent enough to raise the presumption of guilt. The presumption arising from possession of the stolen property is a presumption of fact. (Id., and authorities there cited.)

Whether the explanation of the defendant of how he became possessed of the property in question was reasonable and truthful, or otherwise, was for the jury to determine.

The jury found against the defendant on all the questions involved in the above contentions of counsel, and we think the evidence given and the circumstances developed warranted such finding.

Counsel further contends that " there is no presumption that the cyanides found in the possession of the defendant were all stolen at the same time, when the evidence shows that they were probably not taken from the possession of the owner at one time, but at different times; that it is not shown that the value of the cyanides taken at any one time amounted to fifty dollars, and that several small larcenies, committed at different times, although from the same person, cannot be united so as to make it grand larceny."

Counsel cites *Scarver* v. *State*, 53 Miss. 407, where the court say: " Where there are successive larcenies, each complete and distinct, and not constituting one *continuing* transaction, the mere retention and possession by the thief of the fruits of his petit larcenies do not make him guilty of grand larceny."

But in the same case the court say: " Where there is one *continuing* transaction, the thief may be convicted of the final carrying away, although there may have been several

distinct asportations in the view of the law." And so it is held in State v. Trexler, 2 Car. Law Reports, 188.

In State v. Martin, 82 N. C. 672, it is held that: "In larceny, several distinct asportations do not constitute different offenses where there is a continuing transaction, and the defendant may be indicted for the final carrying away."

In that case, the articles alleged to have been stolen by Martin were taken from the prosecutor's store at various times during the months of August and September.

Evidently the criminal formed the intent of stealing as much of the cyanides as he could conveniently get away with and dispose of with the least probability of detection. Accordingly, he took small quantities at a time, with the idea that the losses would be attributed to defects in the machinery or process of reducing the ores, or some cause other than larceny. And when he had thus abstracted the thirty-one pounds, he carried them away, thus completing the felonious transaction he conceived, and upon which he entered and consummated.

We are of opinion that it was a continuing transaction, completed by the final asportation as contemplated by the criminal. The value of the cyanides being fifty dollars and over, the crime is grand larceny.

The refusal of the court to give the following instruction is claimed to be error: "You are instructed that, in order to convict the defendant, you must not only be satisfied beyond a reasonable doubt that the property described in the indictment was stolen from the April Fool Gold Milling and Mining Company, but that the defendant either stole the property, or that he aided or encouraged the theft, and, if circumstances are alone relied on by the prosecution, then each circumstance must be proved beyond a reasonable doubt. And all the circumstances so proved must be such that the defendant could not be innocent in the light of their existence."

The instruction that "all the circumstances so proved must be such that the defendant could not be innocent in the light of their existence," we think suggests that degree of certainty which would exclude the possibility of the innocence of the accused. The law requires no such certainty.

If the circumstances, all taken together, exclude to a moral certainty every hypothesis but the single one of guilt, and establish that one beyond a reasonable doubt, they are sufficient. The court correctly charged the jury on all the questions involved in the issue.

The judgment and order appealed from are affirmed.