[Crim. No. 236.   Fourth Appellate District.—August 11, 1932.]

THE PEOPLE, Respondent, v. L. BRATTON, Appellant.

338

Edward L. Davin for Appellant.

U. S. Webb, Attorney-General, and Alberta Belford, Deputy Attorney-General, for Respondent.

MARKS, J.—Appellant and J. L. Spencer were jointly charged with the crime of grand theft by an information filed by the district attorney of San Diego County. Both defendants were found guilty by the jury. This appeal is

taken by L. Bratton from the judgment and from an order denying his motion for new trial.

Appellant urges four grounds upon which he maintains the judgment and order appealed from must be reversed: First, that the evidence was not sufficient to support the judgment and verdict against him; second, errors in instructions given by the court to the jury; third, that if he be deemed guilty of any crime it was that of petty theft only, and not grand theft; fourth, that there was a valid contract of employment between defendants and the complaining witness which might have been the subject of a civil action but not of a criminal complaint. The fourth specification is included within the first and need not be separately considered.

Appellant and Spencer opened an office in the Bank of America Building in San Diego for the sale of a product of the National Automatic Dishwasher Company, Ltd. They inserted an advertisement in a San Diego daily paper as follows: ''Will train steady worker; $36 week; good future; $200 cash deposit required, returnable. 823 Bank of America Bldg.'' This was answered by Joe Ferrari on February 11, 1932. After a conversation with appellant and Spencer in which they represented to him that they desired to employ him as a service man to deliver, make collections for and service portable dishwashing machines at a salary of $30 a week with $6 additional for the use of his automobile in this business, Ferrari signed a written application for the employment. He was told that he would be required to deposit $200 in the nature of a bond for the faithful performance of his duties. Not having this sum with him he gave Spencer $2 and was told to return in two days, during which time the defendants would investigate his character and decide whether or not he would be employed. He returned on February 13th, accompanied by S. E. Stensrud, a friend. The two of them talked over the proposed employment with both defendants, Ferrari signed a contract of employment with the ''Spencer Sales Company'' and gave Spencer, in appellant's presence, the sum of $200. The ''Spencer Sales Company'' apparently was a fictitious name under which Spencer, and perhaps Bratton also, operated. Ferrari then asked Spencer for a return of his $2. Spencer replied that he did not have the change and

340

asked appellant if he had any. Appellant gave Spencer $1, which he, in turn, gave to Ferrari. The $201 which Ferrari had deposited was retained by Spencer for himself and appellant. On February 15th Ferrari reported at the office in the Bank of America Building and was sent out by Spencer and Bratton with another party to look for salesrooms. He did not see either of the defendants again. No portion of the $201 was ever returned to him.

The matter of the advertisement in the San Diego paper came to the attention of the manager of the Better Business Bureau of San Diego, Stanley M. Gue, deputy state labor commissioner for San Diego, and the district attorney for that county. On February 15th Mr. Gue and an investigator from the district attorney's office called upon the defendants at their office in San Diego. The two defendants made many conflicting and what subsequently proved to be untrue statements to these witnesses concerning their activities in San Diego. They denied having signed any contract of employment or having taken any deposits from any prospective employees. Mr. Gue testified as to portions of this conversation as follows: "Mr. Stafstrom, of the district attorney's office, asked both Mr. Bratton and Mr. Spencer some questions. I do not recall the exact wording. One, I believe, was asked them how long they had been here. And they said they had come from Los Angeles a few days before. And I asked them both where they were living. And they said: 'At the Knickerbocker Hotel'; they had previously lived at the Ford Hotel. I asked them if they lived together; and they told me 'Yes'. And I asked them if they were representing the National Dishwasher Company; and both of them told me 'Yes', that they were, they had the exclusive territory of San Diego county for the National Dishwasher Company. Then I asked Mr. Spencer why the application for employment had a heading 'National Dishwasher Company', and the contract of employment, as I recall it, had 'Spencer Sales Company' in it. And he said—well, he said, 'We are acting for the National Dishwasher Company of Los Angeles'. And I asked Mr. Bratton the same thing; and he told me that was correct. I called his attention to the wording on the door of their office, 'National Dishwasher Company—J. L. Spencer', and I asked Mr. Bratton what his connection with

it was. And he said Mr. Spencer was the manager and he was the assistant manager.'' The defendants were then taken to the office of the district attorney of San Diego County, where they were further questioned by a deputy district attorney, and, after going over much of the ground covered in a former conversation detailed in Mr. Gue's testimony, the following occurred: ''Mr. Baugh also asked both of them if it was true that they had received $200 from Mr. Ferrari, and they both said, 'Yes'. I asked them both what they had done with the money. And they told me they had used it to pay hotel bills and that they had taken a trip to Los Angeles over the week end. And I asked them if they could pay the money back. I asked them if they could pay the money back, if they wanted to pay it back to Joe. And Mr. Spencer says, 'Well, I haven't got any money.' And he turned to Mr. Bratton and he said, 'Can you raise it?' And Mr. Bratton said, 'No, I can't raise it.' ''

Since the amendment of section 484 of the Penal Code (Stats. 1927, p. 1046) the crimes of larceny, embezzlement and false pretenses have been included within the crime of theft. In the case of *People* v. *Myers,* 206 Cal. 480 [275 Pac. 219], it was held that this amendment was designed to simplify procedure and to relieve courts from technical questions arising from contentions that the evidence shows the commission of one of these crimes other than that alleged in the information. It has been specifically held that where an information charged the defendant with the crime of theft by feloniously taking money or property belonging to the complaining witness, that theft by means of what is generally known as embezzlement was included within the information and proof of such was admissible under the allegations of the information and would sustain a conviction under its terms. (*People* v. *Fewkes,* 214 Cal. 142 [4 Pac. (2d) 538]; *People* v. *Murakami,* 122 Cal. App. 221 [9 Pac. (2d) 583].)

In the instant case there is competent and material evidence in the record that the complaining witness deposited with both defendants money which they were to hold as security for the faithful performance by Ferrari of the duties of his employment. Both defendants admitted they had spent this money in paying hotel bills and on a trip to Los Angeles and that they did not have the money in

their possession prior to their arrest. This evidence is amply sufficient to support the verdict and judgment, even though in their testimony at the trial they denied both the making of the statements and the truth of their admissions in the office of the district attorney. ▊ The fact that this money was deposited with them in connection with a written contract of employment cannot excuse their misappropriation of it.

▊ Appellant next complains because the trial court instructed the jury in effect that the crime of grand theft consisted of the fraudulent appropriation of money or property of another which has been entrusted to the defendants and did not instruct them that such appropriation must be felonious. Section 484 of the Penal Code first defines grand theft as the felonious stealing, taking, carrying, leading or driving away personal property of another, which is the crime of larceny as it existed prior to the amendment of 1927. It next defines grand theft as the fraudulent appropriation of property which has been entrusted to defendants by another, which is theft by means of embezzlement. The evidence in the case showed theft by this latter means and the trial court instructed the jury in accordance with the code definition of this particular kind of grand theft. An instruction defining a crime in the language of the statute has been held sufficient. (*People* v. *Martin*, 44 Cal. App. 45 [185 Pac. 1003].) The instructions to the jury were full, fair and complete and we find no error in them.

▊ Appellant next urges that if the evidence showed him guilty of any offense it was petty theft and not grand theft. He maintains that because the $1 of the $201 of Ferrari's money taken by the defendants was obtained on February 11, 1932, and the $200 on February 13, 1932, that he could not be guilty of stealing more than the $200 which he obtained on the second date, as he urges the transactions were separate ones.

It is true that the defendants received the $201 in two installments. It is also a conclusion justified by the evidence that when they paid the hotel bills and went on the trip to Los Angeles they had in their possession the total sum and admitted spending it. The crime of larceny by means of embezzlement does not depend upon the time of

the acquisition of the money embezzled. It presupposes a lawful acquisition of the money by them. Theft by means of embezzlement is the misappropriation of the money by the defendants. The intent to steal by means of embezzlement may come into existence after the acquisition of the money by defendants and prior to or coincident with its misappropriation by them. The degree of the crime, whether it was grand or petty theft, is determined by the amount of money or property misappropriated. It makes no difference whether the money was acquired by them in amounts of less or more than $200. ▇ In the instant case the defendants had in their possession more than $200 belonging to the complaining witness at the time of their misappropriation of his funds and appropriated it all to their own uses. This makes the offense grand theft. This rule was recognized in the case of *People* v. *Sing*, 42 Cal. App. 385 [183 Pac. 865, 869], where it was said: "Because part of the potatoes were taken and hauled away from the ranch of the Japanese on September 1st and part on September 2d, and the balance on September 3d, appellant claims that there were three separate and distinct offenses, and that the court should have granted his motion to compel the prosecution to elect one of the three offenses as that upon which it would rely for a conviction. The transaction in which the potatoes were taken was a continuous one. Appellant and his confederate St. Clair, when they first went to the ranch of the Japanese and negotiated for the potatoes, evidently designed to obtain possession of the 252 sacks by fraud and deceit, i. e., by fraudulently pretending that the sale was a *bona fide* cash sale, and by leading the Japanese to believe that the potatoes, notwithstanding their delivery, would be immediately paid for and would not be resold until cash payment should be made as represented by them. It is evident that, from the beginning, defendant and St. Clair intended to appropriate the potatoes to their own use after having obtained the possession fraudulently. Although the deliveries to defendant and St. Clair and the hauling away were distinct acts, still they were continuous. The whole transaction was one continuous proceeding, instigated by one impulse and one purpose. Appellant and his confederate having embarked upon a scheme to appropriate the potatoes to their own use after they should have induced

the Japanese to deliver possession under the impression that they would immediately receive cash payment, and having pursued this scheme until it was effectuated, it is immaterial that it required a number of days to consummate it. All the potatoes having been taken in pursuance of one purpose, they were, legally speaking, taken at the time time. The law is that if the different asportations from the same owner are prompted by one design, one purpose, one impulse, they are a single act, without regard to time. (*Carl v. State,* 125 Ala. 89 [28 South. 505]; *Flynn v. State,* 47 Tex. Cr. Rep. 26 [83 S. W. 206]; *Ex parte Jones,* 46 Mont. 122 [126 Pac. 929]; *Wilson v. State,* 70 Tex. Cr. Rep. 631 [158 S. W. 516]; *State v. Gibson,* 37 Utah, 330 [108 Pac. 349]; *State v. Mandich,* 24 Nev. 336 [54 Pac. 516]; 25 Cyc. 61.)"

The judgment and order appealed from are affirmed.

Barnard, P. J., and Thompson (V. N.), J., *pro tem.,* concurred.