[Crim. No. 346. Fourth Appellate District.—June 29, 1937.]

THE PEOPLE, Respondent, v. SIDNEY F. BROCK, Appellant.

Howell W. Richardson and P. E. Bingham for Appellant.

U. S. Webb, Attorney-General, and Frank Richards, Deputy Attorney-General, for Respondent.

JENNINGS, J.—The defendant, who was accused of having committed the crime of grand theft, pleaded not guilty on arraignment and was tried before a jury which returned a verdict of conviction. He presented a motion for a new trial, which was denied. He then made application for probation, which was likewise denied, and judgment was pronounced against him. From the trial court's order denying the motion for a new trial and from the judgment rendered as aforesaid defendant appeals. ■ The notice of appeal recites that an appeal is also taken from the verdict and from the order denying defendant's application for probation and from an order denying defendant's motion for arrest of judgment. The record fails to show that a motion in arrest of judgment was presented. The attempted appeal from an order that was evidently not made and even if it had been made would not be appealable (*People* v. *Williams*, 184 Cal. 590 [194 Pac. 1019]) is therefore dismissed. Since an appeal from a verdict is unauthorized this appeal is likewise dismissed. (*People* v. *Bratten,* 137 Cal. App. 658 [31 Pac. (2d) 210].) The order denying defendant's application for probation having been made prior to judgment is not appealable and the appeal attempted to be taken therefrom is also dismissed. (*People* v. *Neel,* 133 Cal. App. 332 [24 Pac. (2d) 230]; *People* v. *Bratten, supra.*)

Appellant's primary contention is that the venue of the alleged offense was not established by competent evidence and that the Superior Court of San Bernardino County therefore lacked jurisdiction to try the cause. Proper con-

sideration of this contention requires some reference to the information whereby appellant was accused of the offense and to the evidence which was produced during the trial.

The information alleges that on or about May 14, 1936, in the county of San Bernardino, state of California, appellant unlawfully took, stole, and carried away a Rix compressor, a large jack and tools and mining equipment which were the property of the Southern Machinery and Supply Company and whose value amounted to $500. It is apparent therefore that the information charged that the offense was committed in San Bernardino County and that if the record contains any evidence which may fairly be declared to show that the *locus* of the crime was correctly alleged appellant's attack upon the jurisdiction of the trial court on the ground stated is unavailing.

Examination of the record discloses that evidence was produced which tended to establish the following facts: On September 9, 1935, the Ibex Springs Mining Company was incorporated. Appellant was one of the original incorporators and a stockholder of said corporation and became one of its directors. The corporation acquired three mining claims which were located near the line between the counties of Inyo and San Bernardino. Prior to January 15, 1936, appellant became superintendent of the corporation and was placed in charge of the mining operations that were being conducted on the aforesaid claims. On January 15, 1936, appellant and A. L. Damon, who was then vice-president of the above-mentioned corporation, called at the place of business of the Southern Machinery and Supply Company in the city of San Bernardino and entered into negotiations for the purchase by the Ibex Springs Mining Company of a Rix compressor and an Ingersoll-Rand jackhammer. Appellant was present and participated in the negotiations which culminated in the execution of a conditional sales contract between the copartnership known as the Southern Machinery and Supply Company and the Ibex Springs Mining Company. This contract, which was executed for the mining company by Damon as vice-president, provided that the above-mentioned machinery would be leased to the corporation at a designated monthly rental which if paid on the dates mentioned in the agreement could be applied on the purchase price specified in the contract which was $665. It was provided that title to the machinery should remain in the seller

pending completion of the sale. Two days after the contract was executed the compressor and jackhammer were delivered to the mining claims and there installed and used in the mining operations that were being carried on by the corporation under appellant's management. On May 24, 1936, the compressor and jackhammer were removed from the mining property by appellant and were first taken by him to the city of San Bernardino and were placed in a public garage, where they remained for five days. Appellant then took them to Los Angeles and stored them in a garage where they remained until June 10, 1936. On the last-mentioned date appellant took the two articles to the Equipment Exchange in Los Angeles, where he placed them on consignment to be sold for an agreed price of $325. At this time appellant received the sum of $125 as a cash advance on the selling price of the articles and it was agreed that if the machinery were not sold before September 15, 1936, appellant might retake possession by paying the Equipment Exchange the sum of $175. On June 24, 1936, the air compressor and jackhammer were located on the premises of the Equipment Exchange and were repossessed by an officer of the Ibex Springs Mining Company, who returned them to the Southern Machinery and Supply Company in San Bernardino. At this time the full amount of the purchase price had not been paid and the reasonable market value of the two articles was approximately $600.

With reference to the exact geographical location of the mining claims from which appellant removed them on May 24, 1936, some evidence was submitted which tended to show that the claims were within the boundaries of San Bernardino County. It is however fair to appellant to state that most of the witnesses who so testified admitted on cross-examination that they had no personal knowledge of the matter. One witness, who was a draughtsman in the office of the county surveyor of San Bernardino County, testified positively that the claims were in San Bernardino County. The witness however admitted that his testimony to this effect was based on his examination of a United States government topographical map which showed Ibex Springs to be approximately $2\frac{1}{2}$ miles south of the line between San Bernardino and Inyo Counties. Appellant himself testified that the property was located in Inyo County and offered to prove that

the property was taxed in the last-mentioned county. This offer was refused by the trial court.

■ Appellant places much reliance on the weakness of the proof submitted by respondent on the question of the *locus* of the offense. It is vigorously urged that this is an essential element of the crime of whose commission appellant was accused and that the burden rested upon respondent to prove the venue beyond any reasonable doubt, a burden which was not sustained. The trial court instructed the jury that venue of the action was one of the essential elements which the state was required to prove and that if the jury was not convinced beyond a reasonable doubt that the *locus* of the crime was within San Bernardino County a verdict in appellant's favor was required. At least one other instruction emphasized the burden which rested upon respondent to prove that the venue of the action was properly laid in San Bernardino County. It is apparent therefore that the jury was fully and correctly advised as to this feature of the case and that the only possible objection with respect thereto which may be urged on this appeal is the familiar contention of evidentiary insufficiency.

Inspection of the record produces a conviction that it may not fairly be declared that no evidence was produced which tended to show that the real property from which the two articles of machinery were removed by appellant was within the boundaries of San Bernardino County. That the evidence which respondent produced for the purpose of establishing this feature of the case was weak must be conceded. Nevertheless, some evidence as to this element of the case was submitted and the responsibility of weighing such evidence under proper advice from the trial judge rested with the jury. The presence in the record of some evidence, however slight, is sufficient to prohibit a reviewing court from disturbing a verdict on the ground urged.

■ Furthermore, if appellant's contention that no competent evidence which showed that the mining claims were located in San Bernardino County was submitted be sustained it still does not follow that the court wherein this action was tried lacked jurisdiction of the cause. The offense charged is grand theft which is defined in section 487 of the Penal Code as theft of money, labor, or real or personal property whose value exceeds the sum of $200. The term "theft" is defined in section 484 of the same code. By this last-men-

tioned section the felonious stealing or asportation of personal property or the fraudulent appropriation of property by one who has been entrusted with its custody is denominated theft. The effect of section 484 as it now appears is merely to amalgamate the crimes of larceny, embezzlement, false pretenses, and kindred offenses under the cognomen of theft. (*People* v. *Myers*, 206 Cal. 480, 483 [275 Pac. 219] ; *People* v. *Bratton*, 125 Cal. App. 337, 341 [14 Pac. (2d) 125].) Respondent in charging that appellant had committed the crime of grand theft was not required to allege expressly the kind of grand theft of whose commission he was accused. (*People* v. *Fewkes*, 214 Cal. 142, 149 [4 Pac. (2d) 538].) It was sufficient to allege generally an accusation of grand theft and if the evidence produced in support of the charge established that appellant had committed the crime of embezzlement and that the court wherein the cause was tried had jurisdiction of the action appellant's primary contention which is directed to the matter of venue is not sustainable.

It is our conclusion that the evidence which was submitted during the trial of this action was ample to establish that the appellant committed the crime of grand theft in the form of embezzlement. If it be conceded, as appellant maintains, that the evidence indicated that the mining claims from which the machinery was removed on May 24, 1936, were actually located within the boundaries of Inyo County we think the jury may nevertheless have concluded from the evidence which was produced during the trial that appellant formed the intent to appropriate the machinery to his own use in San Bernardino County. The witness Nuttman, who accompanied appellant to San Bernardino on May 24, 1936, testified that appellant told him he was taking the machinery to San Bernardino for the purpose of storing it in that city. The witness W. F. Wickham, who was vice-president of the Ibex Springs Mining Company at the time the action was tried, testified that on May 16, 1936, appellant came to Santa Barbara and was present at a conference between several officers of the mining company at which time appellant stated that the weather was too warm at the place where mining operations were being conducted to justify continuing such operations during the summer months and that if there should be a cessation of work it would be necessary to place the machinery at a camp where a watchman would

be on duty or to remove the machinery to some undesignated place for safekeeping. The contract of conditional sale of the machinery which was admitted in evidence expressly provided that the Ibex Springs Mining Company should not take the machinery or allow it to be taken out of the counties of Inyo or San Bernardino. The Southern Machinery and Supply Company, seller of the machinery, had its place of business in the city of San Bernardino. From the above-mentioned facts the jury may well have inferred that when the appellant removed the machinery from the mining claims he expected to store it in the city of San Bernardino and that not until he had arrived in this city did he form the intent of converting the property to his own use. It is fundamental that the intent to appropriate property is a necessary element of the crime of embezzlement. Obviously the intent which accompanies the formation of a plan to do an act is inherently difficult to prove by direct evidence. The act itself together with the circumstances surrounding its execution must generally form the basis from which the intent may legitimately be inferred. (*People* v. *Goodrich,* 142 Cal. 216, 220 [75 Pac. 796].) ██ Undeniably, the appropriation of the property was finally consummated in the city of Los Angeles. This fact is not however conclusive of the venue of the action. Conceivably appellant might properly have been prosecuted in Los Angeles County. It does not however follow therefrom that the courts of Los Angeles County alone had jurisdiction of the action. Section 786 of the Penal Code provides that when property taken in one county by embezzlement is brought into another county jurisdiction of the offense is in either county. We have indicated our opinion that the facts heretofore stated were sufficient to warrant the inference which the jury evidently drew that appellant conceived the intent to appropriate the property after he had arrived in the city of San Bernardino and before he took the property to the city of Los Angeles. The inference so drawn warrants the conclusion that the offense of embezzlement was completed in San Bernardino County and the fact that the act of appropriation occurred in Los Angeles County did not divest the courts of the former county of jurisdiction of the offense.

██ In connection with the matter of venue appellant complains that the trial court erroneously refused to permit

him as a witness in his own behalf to give certain testimony which would have tended to show that the location of the mining claims from which he admittedly removed the machinery on May 24, 1936, is in Inyo County. Appellant also complains that the trial court erroneously sustained objections interposed by respondent to specified questions propounded by him to certain witnesses for the prosecution on his cross-examination of such witnesses. The declared and evident purpose of the inquiries to which objections were sustained was to elicit testimony which would indicate that the location of the Rob Roy group of claims is in Inyo County.

With respect to the complaints thus presented, it may first properly be noted that appellant testified positively without objection that the real property from which he removed the machinery is located in Inyo County. The evidence which he now maintains he should have been permitted to produce would have been merely cumulative and the trial court did not abuse its discretion in declining to receive it.

Furthermore, if it be assumed that the trial court erred in circumscribing appellant's cross-examination as contended and in its refusal to permit appellant himself to give the testimony which he desired to give, it is nevertheless our conclusion that the commission of such error does not justify reversal of the judgment. We have heretofore indicated our opinion that the evidence which was produced during the trial of the case was sufficient to warrant the jury in drawing the inference that the crime of embezzlement was actually committed in the city of San Bernardino. In arriving at this conclusion we have assumed that the prosecution failed to prove beyond a reasonable doubt that the mining claims are located in San Bernardino County. It is manifest that such assumed failure of proof is as fatal to the prosecution as a declaration that the evidence in fact showed that the claims are within the boundaries of the adjacent county of Inyo. In other words, we think that it may be assumed that the Rob Roy group of claims is located in the last-mentioned county. Indulgence in this assumption, however, produces no different result from that which has been achieved by merely assuming that the prosecution had failed in its proof of location. If, as we think, the facts and circumstances disclosed by the record are such that the jury was warranted in drawing the inference that the intent to appropriate was

formed after appellant had brought the machinery into the city of San Bernardino, it is immaterial whether the place from which he first removed it was in San Bernardino County or Inyo County. In either event the venue of the action was properly laid in San Bernardino County and the superior court of that county had jurisdiction of the offense. It follows, therefore, that if it be assumed that the trial court erred in its rulings with respect to the reception of the evidence of which appellant particularly complains, no prejudice resulted to appellant therefrom and no miscarriage of justice was thereby accomplished.

 Appellant also maintains with respect to the proper venue of the action that the evidence showed that, if any conversion of the machinery occurred, such conversion took place in Los Angeles County and the courts of that county had jurisdiction of the offense. The answer to this contention is that it is the place where the intent to embezzle is formed which is important in determining the question of jurisdiction in a prosecution for embezzlement. (*People* v. *Baker*, 64 Cal. App. 336, 342 [221 Pac. 654].) As heretofore stated, we entertain the opinion that the jury was justified in drawing the inference that such intent was formed by appellant in San Bernardino County. This effectually disposes of the much-argued question of venue.

 Appellant further complains that he was unduly circumscribed in his cross-examination of the witness Wickham and particularly that he was not permitted to propound certain inquiries which would have developed evidence indicating the interest this witness had in the outcome of the case and the prejudice and bias which he entertained against appellant. Examination of the record has produced a settled conviction that the trial court committed no error in its rulings in this regard.

 Appellant contends that the trial court improperly sustained objections to certain questions that were propounded to him by his counsel on direct examination. It is urged that thereby he was prevented from disclosing fully all the circumstances which surrounded the transaction whereby the machinery was placed on consignment with the Equipment Exchange in the city of Los Angeles. Analysis of the inquiries which form the basis for this contention together with the testimony which appellant gave regarding this transaction indicates that, if the objections had not been sustained,

appellant would have testified that the Ibex Springs Mining Company was indebted to him in some amount and that he had been advised by some officer of the mining company that the only way he could hope to receive the money due him was by selling the air compressor and jackhammer. The contention thus advanced is untenable. Section 504a of the Penal Code provides that any person in possession of any goods, chattels, or effects knowing them to be subject to a contract of lease or of purchase who shall remove, conceal or dispose of the same with intent to injure or defraud the lessor or owner thereof is guilty of embezzlement. It is not disputed and the evidence conclusively established that appellant knew that the two articles of machinery were being purchased by the company of which he was a director, under a contract of conditional sale, and that he had full charge and control of these articles in his capacity as superintendent of operations. The above-mentioned section of the Penal Code obviates the possibility of making the defense proposed under the circumstances disclosed by the evidence.

Appellant's final complaint is that the trial court improperly commented upon the evidence at the time it instructed the jury. The trial court's comment to which this objection is directed was that appellant claimed that he had the right to remove the machinery for storage purposes and that in so doing he acted with the express authorization of the mining company but that if this were true it would seem that the contract of conditional sale would not permit such disposition of the machinery to be made without the consent of the Southern Machinery and Supply Company. The court then suggested that the jury should read the contract for the purpose of discovering what rights were retained by the seller and what were the rights and obligations of the buyer under its terms. Appellant's particular ground of objection to the court's comment is that it presupposes that appellant had full knowledge of all terms of the conditional sale contract in the absence, so it is contended, of any evidence which tended to show that appellant had such knowledge. The objection is devoid of merit. The evidence conclusively showed that appellant was not only present when the written agreement was signed by the vice-president of the mining company who accompanied him to the seller's place of business but that appellant himself conducted the negotiations which preceded the execution of the

written instrument. The word "negotiations" is a broad term and the court was amply warranted in concluding that appellant's testimony that he negotiated for the purchase of the machinery indicated that he was fully conversant with all the conditions of the transaction which were incorporated in the formal written contract.

For the reasons stated the judgment and order from which this appeal has been taken are and each of them is affirmed.

Barnard, P. J., and Marks, J., concurred.