[Crim. No. 4872. Second Dist., Div. Two. Mar. 31, 1953.]

THE PEOPLE, Respondent, v. JOHN OWENS, Appellant.

John Owens, in pro. per., for Appellant.

Edmund G. Brown, Attorney General, and Norman H. Sokolow, Deputy Attorney General, for Respondent.

FOX, J.—Plaintiff was convicted of 14 counts of grand theft and 17 counts of violation of Penal Code, section 337a, subdivision 3. He appeals from the verdict and judgment and the order denying his motion for a new trial.

Defendant represented to a number of businessmen that he was an ex-jockey and belonged to a jockeys' association; that at least once in every meet there was a jockey race, or a fixed race, so that unemployed jockeys could themselves place bets on this particular race and have a select clientele for whom they could also place bets. Defendant explained that his clients gave him various amounts of money to be bet on these particular races and that his fee for handling the transaction was one third of the winnings. There were no such races. Defendant, however, received from his victims various amounts, ranging from $250 to $1,000, to be placed on such races. None of these amounts were or could be so wagered for there was no fixed race. After receiving the money for the so-called wager, defendant then disclosed to his victim the horse on which the money would be placed.

As to 14 of these transactions, there are two counts in the information growing out of each. One count charges grand theft (Pen. Code, § 484), and the other charges defendant with receiving money to be wagered on horse races (Pen. Code, § 337a(3).

Defendant claims that the convictions of grand theft must be reversed because "the evidence is insufficient to establish the required specific intent to permanently deprive the owners of their property at the time they issued their checks" to him. This proposition is not well founded. There was no fixed race, which fact defendant knew when he made the contrary representation to his several victims. However, they parted with their money in reliance on his statements from which the inference readily arises that he intended to permanently deprive them of their property at the time he acquired possession thereof. The evidence is ample to support the grand theft convictions upon either the theory of false pretenses or by trick and device. (*People* v. *Chamberlain*, 96 Cal.App.2d 178, 181-183 [214 P.2d 600] ; *People* v. *Rial*, 23 Cal.App. 713, 717 [139 P. 661] ; *People* v. *Caldwell*, 55 Cal.App.2d 238, 247-250 [130 P.2d 495].) The victims were not betting on a particular horse. The later identification of the horse and the race was merely an incident in defendant's fraudulent scheme by which he procured money to be placed on a particular kind of race, viz., a fixed race, which he knew did not exist.

Defendant attempts to escape conviction under section 337a(3) on the ground that the evidence indicates he "placed most of his bets at one of the race tracks through the pari mutual machine as provided by law." This defense was considered and rejected in *People* v. *Tompkins,* 109 Cal.App. 2d 215 [240 P.2d 356]. The court stated (p. 221) that to "sustain it would be to permit commercialized gambling conducted away from the race track to flourish" and pointed out that this was contrary to the public policy of the state as expressed through its legislative enactments. Defendant's contention here is wholly without merit.

Defendant argues that the same transaction cannot constitute two offenses, and therefore he could not be guilty of violating both section 337a(3), Penal Code, and grand theft as a result of his dealings with any one of his victims upon any particular occasion. He fails to conceive, however, the implications of each of these transactions, and the facets of public policy which each transgresses. The rule is that ". . . A defendant may be convicted of separate offenses arising out of the same transaction when each charge is separately stated and the offenses differ in their elements and one is not included in the other." (*Rodriguez* v. *Superior Court,* 27 Cal.2d 500, 501 [165 P.2d 1].) It is clear that these offenses differ in their elements and one is not included in the other. By the terms of section 337a(3), Penal Code, it is a public offense to receive "in any manner whatsoever" money for the purpose of being bet upon the result of a horse race. The purpose of this act is to protect the public against commercial gambling, generally, on horse races. The essence of this offense is the receipt of money to be used for that prohibited purpose. This is very different from a public policy which makes it a crime for a person to knowingly and designedly defraud, another of his property by false pretenses or by some trick and device and thus commit grand theft. (Pen. Code, § 484.) In *People* v. *McCabe,* 60 Cal.App.2d 492 [141 P.2d 54], conviction on 19 counts of grand theft and 19 counts of violation of the Corporate Securities Act (there being two counts based on each transaction) was affirmed. As to the latter violation, the court pointed out (p. 494) that each "was concomitant with and constituted a part of the device designed whereby to gain possession of the sums of money taken from the several prosecution witnesses. . . ." Here the counts arising out of violations of section 337a(3), Penal Code, are based upon acts that were concomitant with

offenses against the grand theft statute and are parts of the device by which defendant fleeced his victims. Different offenses are thus alleged and the convictions thereon must be sustained.

During the course of defendant's dealings with Mr. Miller the latter gave him a check for $500 to be wagered on Federalist in the ninth at Tanforan on the representation that "this one was definitely in." Miller determined from the Sunday paper that Federalist did not win. On Monday morning he stopped payment on the check. This is count 14, which charges grand theft. Soon after the jury was originally charged and retired to deliberate it returned to the courtroom requesting an answer to a question that had arisen. The judge announced, in the presence of counsel and defendant, that: "I have a question which the jurors would like to have answered. The question reads, 'Mr. Miller stopped payment on the check, and the money was not deducted from his account. Does this constitute a theft?' If I understand the question, . . . what you want to know i[s], where otherwise a theft would exist, but the property obtained was a check, does the check have to be cashed? It is the obtaining of property unlawfully in any one of the manners described, either embezzlement, false pretenses, or larceny by trick and device, which constitutes the theft. The fact that a person whose property has been stolen, if it has been stolen, doesn't lose anything by it, doesn't alter the situation. The test is whether there was a stage in the proceedings when a person was unlawfully deprived of his property by any of the means. Let me put it another way, so we don't get too close to the case— If I were walking down the street and a pickpocket picked my pocket and took a $100.00 check out of my pocket and I found out the check was gone and stopped payment on the check, the fact of the pickpocket stealing my check is not altered, he still stole my check." The essence of this statement finds support in *People* v. *Rial, supra*, p. 719, and *People* v. *Frankfort*, 114 Cal.App.2d 680, 701-702 [251 P.2d 401].

■ Defendant contends that the court's statement "ignores one of the essential elements of theft, namely, the intent *at the time of the taking* to permanently deprive the owner of his property." As the judge stated, however, he assumed the jury was concerned with the situation "where otherwise a theft would exist." The court referred to the obtaining of property unlawfully "in any one of the manners described" as constituting theft. It must be presumed

126

that in the previous instructions, which are not part of the record, the jury was correctly and fully instructed on what constituted theft and the element of intent in relation thereto. (*People* v. *Hidalgo,* 78 Cal.App.2d 926, 936 [179 P.2d 102].)

Defendant also contends that the court's statement implied he was guilty of grand theft and that the use of the word "stolen" is an "ambiguous reference" to the crime with which he was charged. There is no merit in these contentions. Furthermore, if defendant desired some more specific statement, it was his duty to request the same. (*People* v. *Carothers,* 77 Cal.App.2d 252, 255 [175 P.2d 30].)

The purported appeal from the verdict is dismissed since such an appeal is unauthorized. (*People* v. *Brock,* 21 Cal.App.2d 601, 604 [70 P.2d 210].)

The judgment and the order denying the motion for a new trial are, and each is, affirmed.

Moore, P. J., and McComb, J., concurred.