WOOD, P. J.
In six counts of an information, the defendant was accused of violating section 337a of the Penal Code, as follows: In counts 1, 4 and 7—violating subdivision 1 on May 27, June 1, and June 2, 1960 (bookmaking on horse racing) ; in counts 2, 5, and 8—violating subdivision 3 on said dates (receiving and forwarding money bet on racing). In counts 3, 6, and 9, he was accused of grand theft. He denied allegations of the information that he had been convicted previously of two felonies (grand theft, and violating of § 337a).
Trial by jury was waived, and by stipulation the cause was submitted upon the transcript of the preliminary examination, reserving the right to offer additional evidence. Defendant was adjudged guilty of counts 1, 2, 4, 5, 7, and 8 .(the counts charging violations of § 337a), and was adjudged not guilty of the other counts (charging grand theft). The allegations of prior convictions were found to be true. He was sentenced to state prison, and it was ordered that the sentences as to the three violations of subdivision 1 (counts 1, 4, and 7) run concurrently with each other; that the sentences as to the three violations of subdivision 3 (counts 2, 5, and 8) run concurrently with each other; and that the “two” sentences run consecutively. He appeals from the judgment and the order denying his motion for a new trial.
*782 Appellant contends (1) that the evidence was insufficient to support the judgment, and (2) that the crime committed, if any, was “touting,” a misdemeanor, as defined in section 337.1 of the Penal Code, and was not bookmaking, as defined in section 337a of that code.
On February 12,1960, the defendant entered Mr. Morrison’s factory, in Temple City, and offered him a proposition “in this horse-racing deal.” Defendant said that he had 11 other customers and he usually tried to have 12, that his proposition was that Mr. Morrison would put up the money and that defendant would bet it on the races and that defendant would get one-third of the winnings. Defendant said that his name was John Owens, he had been a jockey, he had connections with all the race tracks, and he had a horse that could not lose. He asked Morrison for $500 and said that he would bet that amount on a horse. Morrison gave him a cheek for $500 on that day, but the horse did not win. About three days thereafter defendant told Morrison that he just happened to miss that time, but they always get two out of three, and the next two races ought to be good. At that time Morrison gave him $500 or $600 for the purpose of betting on the races.
On February 17, 1960, Morrison gave defendant $700, and defendant said he was going to put it on the horses. On February 18 he gave defendant $700, and defendant said he would bet it on a horse. On February 19 he gave defendant $700 to bet on the horses. On February 23 he gave defendant $1,000 to bet on the horses. On February 25 he gave defendant $1,000 to bet on the horses. On February 29 he gave $2,000 to defendant, who said he would bet the money on the races. In the various conversations with defendant about betting, defendant said he would bet at Santa Anita, Las Vegas, San Francisco, or various places in the county. Morrison gave additional amounts of money to defendant on nine occasions in March 1960, on five occasions in April 1960, and on seven occasions in May 1960, for the purpose of betting on horse races. On May 27 he gave defendant a check for $150. On June 1 he gave him a check for $500. On June 2 he gave him a check for $500. These last three checks, which pertain to the counts charged herein, were endorsed by appellant and were given to him for the purpose of betting on horse races. The total amount which Morrison gave to defendant for such purpose was more than $20,000. Morrison did not receive any money as a result of the transactions. The last transaction with defendant was on June 2, 1960, and after that date the *783 defendant went to see Morrison on several occasions but Morrison refused to have a further transaction with him. Defendant told Morrison that he was foolish to give up the deal, and that if he would stay with it long enough the defendant would win the money “back.”
Mr. Worthington, who owns a foundry in Burbank, testified that in the latter part of 1960 the defendant entered his place of business and told him that a good friend had sent him there, that defendant had “a sure horse,” and that he thought the friend was doing Worthington a favor by having defendant place a bet on the horse; defendant said that he did not want to discuss the friend’s name until Worthington had made the wager and won the big loot; after Worthington replied that he was not interested, the defendant left the place.
Mr. Trego, who owns a machine shop in Burbank, testified that on August 3, 1960, the defendant came to his shop and told him that a mutual friend had sent him there to let Trego in on “a good thing” which was a cinch race that had been set up; defendant exhibited a card which indicated that he was Jockey Owens, and he asked Trego how much he wanted to bet; defendant said that once during the “meet” they had a “fix” and they did not want to crowd it too far because they would ruin the odds, that it was approximately six to one; Trego did not give him any money.
Mr. MeClenan, the owner of an electronics shop in Burbank, testified that on August 3, 1960, the defendant came to his shop and told him that a good friend of MeClenan had sent him there and he had a sure thing on this race, and that the friend thought that MeClenan would be interested in it; defendant said that it was the fourth race at Del Mar on that day and the name of the horse was “Sumburg”; he said he always goes to Las Vegas and bets the money there; MeClenan gave him a check for $300; defendant said that he would keep one-fourth of the winnings; soon thereafter the defendant was apprehended by an officer in front of MeClenan’s place of business; payment of the check was stopped.
Defendant testified as follows: He was a jockey from 1919 to 1931. He quit racing in 1931 when he had “a spill” and was injured. On May 27, 1960, when Morrison gave him a check for $650, there was conversation about betting the money on a horse. He (defendant) went to Hollywood Park and bet that money and some of his own money. On June 1, 1960, when Morrison gave him $500, he (defendant) said he would bet the money on a horse at Hollywood Park. He went there and bet *784 the money. On June 2, 1960, when Morrison gave him $500, they had a conversation about betting on a horse. Defendant went to Hollywood Park and bet the money ou a horse. On those three occasions he bet to win, and two of the horses ran second. It was just bad luck. With respect to those races he did not get information from anyone. He depends principally upon the workouts which he watches early in the morning. Pie also checks the newspapers. He told Morrison that he does his own handicapping.
With reference to appellant’s contention that the evidence was insufficient to support the convictions under subdivision 1 of section 337a (bookmaking), he argues that there was no proof that he made a book of bets, but there was proof that he and Morrison were partners.
With reference to appellant’s contention that the evidence was insufficient to support the convictions under subdivision 3 of said section (receiving, holding, and forwarding bets), he argues that said subdivision cannot be applied to a person who holds or forwards his own bet; that a person who takes his own bet to a race track is not holding or forwarding a bet within the meaning of that section; that defendant and Morrison were partners, and that defendant, as a partner, was in legal effect taking his own money to the track.
In People v. Owens, 117 Cal.App.2d 121 [255 P.2d 114], wherein this present defendant was charged with violations of subdivision 3 of section 337a, it was asserted, as a defense, by defendant that he placed his bets at a race track through the parimutuel machine as provided by law. It was held therein (p. 124) that the asserted defense was wholly without merit.
Section 337a, subdivisions 1 and 3, of the Penal Code (violations of which are charged herein) provide: “Every person, 1. Who engages in pool-selling or bookmaking, with or without writing, at any time or place; or ... 3. Who, whether for gain . . . or gratuitously, or otherwise, receives, holds, or forwards, or purports or pretends to receive, hold, or forward, in any manner whatsoever, any money . . . bet or wagered, or to be . . . bet or wagered . . . upon the result ... of any . . . contest . . . of . . . speed . . . of . . . beast . . . , Is punishable by imprisonment in the county jail or state prison. . . . This section shall apply not only to persons who may commit any of the acts ... as a business or occupation, but shall also apply to . . . persons who may do in a single instance any one of the acts specified....”
The taking of one bet is sufficient to justify a con *785 vietion under subdivision 1 of said section (People v. Lomento, 155 Cal.App.2d 740, 742 [318 P.2d 707]) and the bet may be oral and need not be recorded (People v. Chaney, 147 Cal.App.2d 740, 741 [305 P.2d 955]).
The trial judge was not required to find that there was a partnership. Under the evidence herein the judge could reasonably find that defendant was the agent of Morrison. The money belonged to Morrison, and the defendant had no ownership in it. Defendant received the money for the purpose of betting on horse races. The evidence was sufficient to support the convictions under subdivisions 1 and 3 of said section 337a.
As above stated, a further contention of appellant is that the crime committed, if any, was touting, a misdemeanor, and was not bookmaking. His theory regarding such contention (as asserted in his brief) is that although section 337a may cover generally the acts involved here, “sections 337.1 et seq.,” dealing with touting, are designed specifically to cover such acts.
A tout, as defined in said section 337.1, is a “person, who knowingly and designedly by false representation attempts to, or does persuade . . . another person to wager on a horse in a race . . . and who asks . . . compensation as a reward for information . . . given in such case. ...” A person who commits such acts is guilty of touting. (Pen. Code, § 337.1.) The section does not contemplate that the person who fur-nishes the alleged information or “tip” is to receive the money wagered on the race. In the present ease, the defendant accepted the checks for all the money that was wagered and he was claiming one-third of the money that might be won. As above stated, the evidence was sufficient to support the convictions under section 337a, and the trial judge was not required to find, in lieu of such convictions, that defendant was guilty of touting, a lesser offense.
. The judgment and the order denying the motion for a new trial are affirmed.
Fourt, J., and Lillie, J., concurred.