## 21332. WHITE *v.* THE STATE.

 749

DECIDED SEPTEMBER 4, 1931.

*John I. Kelley, Walter A. Sims,* for plaintiff in error.

*John A. Boykin, solicitor-general, J. W. LeCraw, William Schley Howard,* contra.

LUKE, J. The first count of the indictment in this case was abandoned by the State during the trial of the case. The second count charged "Jack White and Harry York with the offense of bribery, for that the said accused, in the county aforesaid, on the 16th day of June, 1928, with force and arms, did unlawfully receive of and from D. F. Seybold, acting for and on behalf of the Indiana Truck Corp. of Georgia, Inc., one thousand ($1,000.00) dollars in money, as a present and reward given by said D. F. Seybold, acting for and in behalf of the above-named corporation, to influence the official behavior of accused in the matter of the purchase by the said City of Atlanta, a municipal corporation, of two 3-1/2 ton Indiana Trucks for the Streets Department of said city; said giving and receiving of said reward being done in pursuance and fulfillment of an understanding and agreement between the said D. F. Seybold—who was an agent and salesman for the Indiana Truck Corporation of Georgia, Inc., and who was known by accused to be such—would give said reward to accused for their behavior in said matter and for their efforts and in-

fluence in aiding said D. F. Seybold, as agent and salesman for the above-named corporation, in procuring the order from said city for the above-mentioned trucks; the accused Harry York was then and there at the time of said agreement and at the time of the paying and receiving of said money a legally qualified councilman and member of General Council of the City of Atlanta, and the matter of the purchase of said trucks for the Streets Department of said city was then and there depending before said council." York pleaded guilty, and White went to trial. Before filing his plea of not guilty White filed a demurrer to the indictment, which was overruled, and to this ruling he excepted pendente lite, and he assigns error thereon in his bill of exceptions. The trial resulted in a conviction; the defendant made a motion for a new trial, which was overruled; and on this ruling also he assigns error.

■ The demurrer to the indictment alleges that the indictment is insufficient as against White, because it does not allege that he was an official of the City of Atlanta or had any official duty to the city, or that he conspired with or aided and abetted York to commit the offense of bribery, and that therefore no offense is set forth against White. This being a misdemeanor and there being no accessories in misdemeanors, a so-called accessory or principal in the second degree is indictable jointly with the principal in the first degree, without any additional allegations explanatory of the part that each played in the commission of the offense; the participation of the defendants being a matter of proof. In *Loeb* v. *State*, 6 *Ga. App.* 23 (64 S. E. 338), this court held: "1. There are no accessories in misdemeanors. All who procure, counsel, command, aid, or abet the commission of a misdemeanor are regarded by the law as principal offenders, and may be indicted as such. The indictment may be joint against all those connected with the criminal enterprise, or it may be several against any one of them. (a) Whether the indictment is joint or several, any particular defendant accused therein of having committed the misdemeanor may be convicted by *proof* either that he directly and personally enacted the criminal transaction, or that he procured, counseled, commanded, aided, or abetted the criminal transaction of another, who was the direct and immediate actor." (Italics ours.) See *Deal* v. *State*, 14 *Ga. App.* 121 (80 S. E. 537); *Hunt* v. *State*, 38 *Ga. App.* 352 (3) (144 S. E. 148); *Davis* v.

*State,* 40 *Ga. App.* 165 (148 S. E. 918). In *Kinnebrew* v. *State,* 80 *Ga.* 232 (5 S. E. 56), our Supreme Court said, "The rule of the common law that in misdemeanors there are no accessories before the fact, but that all who would be such in felonies are principals in misdemeanors, is still of force in Georgia." There could be no surprise or lack of notice to White because of the wording of the indictment; because it shows on its face that York was the defendant alleged to be a member of council, so White must have had notice thereby that the State expected to prove that he aided and abetted York. Misdemeanors, being less grave, are treated by the law with slightly less formality than felonies; and even in felonies no distinction is necessarily made in the allegations between principals in the first and second degrees. In *Bradley* v. *State,* 128 *Ga.* 20 (57 S. E. 237), it was held: "As principals in the first and second degrees in the crime of murder are punished alike, no distinction between them need be made in the indictment." "Where two persons are jointly indicted for murder, each may be convicted upon evidence showing that he was either the absolute perpetrator of the crime, or was present, aiding and abetting the other in its commission." And in *Maughon* v. *State,* 9 *Ga. App.* 559 (2) (71 S. E. 922), it was held that when one defendant actually commits the offense and the other aids and abets him, "the indictment may either allege the matter according to the facts, or charge them both as principals in the first degree." See also *Bullard* v. *State,* 34 *Ga. App.* 198 (128 S. E. 920). Since all who aid or abet the commission of a misdemeanor are regarded by law as principal offenders, and may be indicted as such, the indictment of two persons, one of whom was a councilman, for the offense of bribery, in the instant case, is not subject to demurrer because of its failure to allege that the other defendant was an officer of the city, or that he aided, abetted, or conspired with said councilman in the commission of the offense, or for any other reason assigned; and the court properly overruled the demurrer.

■ The 1st special ground of the motion for a new trial, stating why "the judgment and sentence of the court based thereon are contrary to law and without evidence to support the same," is but an amplification of the general grounds and will be treated as such. The evidence amply authorized the finding of the jury that White accepted the bribe alleged in the second count of the

indictment, and disclosed a nefarious scheme of operation whereby York and White, acting in conjunction, would, for a stipulated sum of money, procure the passage by the City Council of Atlanta of various measures. White or York, or both, would ascertain and interview parties desiring measures passed by the General Council of Atlanta, and then make an agreement with such party for a stipulated sum. In other words, York would sell his vote, influence, and advantage by virtue of being a member of the City Council, and White would assist him in doing this and get half of the proceeds therefrom. They operated through concerns which they owned jointly, principally through the Southeastern Brokerage Company Inc. Relative to the particular transaction alleged in the second count, the evidence shows that D. F. Seybold, agent for Indiana Trucks Inc., went to the office of the Southeastern Brokerage Company, which was operated by York and White; that he "told Mr. White and Mr. York" that he had been trying to sell the city some motor-trucks, and that he would pay them a special commission of $1,000 on two trucks which he desired to sell to the city. White and York agreed to help get the orders; the city bought the two trucks, and Seybold paid the commission of $1,000, the money being handed to White. Seybold testified: "We just set up that amount on those particular sized trucks, as special commission. It is not figured on a percentage basis. That represents the amount that we agreed to pay. I agreed to pay him $500 on each of the two big trucks, and $150 on the other, and that is the way I paid it out. That was according to *the agreement I had with Mr. White and Mr. York.* . . I made the statement that I heard Jack White with the Southeastern Brokerage Company could help to put over deals. . . It is true that Mr. York replied, 'I will do all I can to get you the business.'" Francis E. Brown, a salesman for the Indiana Truck Company at the time of the alleged transaction, testified: "Mr. Seybold told me that Mr. York and Mr. White were helping on the sale of those trucks to the street department. . . I talked to Mr. York. He said he thought he would be able to help us get some business. . . He said he would help us get the business. . . Mr. Seybold told me he thought he *had things lined up* so we could get some business. He just said I had better call on those committees for policy's sake. . . Mr. York was on the street committee. The trucks

they bought from us were for the street department." The evidence showed that Seybold telephoned White that he had his commission and was coming to the Fourth National Bank; that White came to the bank; that Seybold went in the bank, cashed the check for $1,000, which was made payable to Seybold, and then came out and paid White $1,000 in cash a short distance from the Fourth National Bank, on Marietta street. The evidence showed also York's action as councilman favorable to the purchase of trucks. There was ample evidence to show that York accepted the bribe for his vote and influence as a councilman, and that White aided and abetted him in the offense and received part of the proceeds therefrom.

■ Grounds 5 and 6 of the motion for a new trial object to the admission of evidence that Seybold, who sold the trucks to the city, paid, in addition to the special commission to York and White, a commission to his regular salesman. This evidence was objected to as irrelevant and immaterial. An objection that evidence is "irrelevant and immaterial" is too general to present a question for consideration. *Herndon* v. *State, 38 Ga. App.* 117 (4) (142 S. E. 695). Furthermore, this evidence referred to the sale of a truck to the school department of the city on which Seybold agreed to pay York and White $150 as special commission. This transaction is set out in the first count of the indictment; and the State having failed to show any official conduct on the part of York in regard to this transaction, the solicitor abandoned this count, and the court instructed the jury to return, and the jury did return, a verdict of not guilty on this count. Therefore any evidence in regard to the count on which defendant was acquitted resulted in no injury to him. *Campbell* v. *Walker, 20 Ga. App.* 88 (2) (92 S. E. 545). However, this evidence was relevant and material to the issue formed by the plea of not guilty to the second count. Seybold's agreement to pay York and White a commission of $150 on the school-department truck, as alleged in the first count, and $500 each on the two trucks for the street department, as set out in the second count, constitute virtually one transaction, and conduct as to the school-department truck would throw light on his conduct as to the street-department trucks; and if Seybold paid commissions to his regular salesman, and York and White were not truck salesmen but were partners, York being a member of

council, this evidence that a commission had already been paid to the regular salesman would strongly indicate that any additional commission paid to a councilman and his partner, was not a lawful commission, but was in the nature of a bribe, since the trucks were bought by the City Council of which York was a member. The evidence admitted had probative value, was material to the issue before the jury, and the court did not err in admitting it.

■ The 7th special ground of the motion alleges error because the court erred in admitting in evidence a resolution authorizing the purchasing agent of the city to receive bids on trucks and some other equipment for the sanitary department and street department, with the provision that said equipment be delivered to the city at once and paid for the first part of 1929, and pledging the members of council to use their best efforts to have the money appropriated for the payment of said equipment; also the record of council showing that York voted for the resolution; also the record of council showing that York was a member of the street committee. This evidence was admissible because it showed York's official conduct and his means of getting through council the authority to purchase the trucks on which he and White were getting a commission; White's partnership with York being shown by other evidence.

■ Special grounds 8, 9, 10, 11, and 12 of the motion complain of the admission of evidence of transactions other than that alleged in the indictment, but of the same general nature, where parties paid or agreed to pay certain sums of money for the services of White and York in putting through various measures with the City of Atlanta authorities. Evidence of these transactions was properly admitted. In *York* v. *State,* 42 *Ga. App.* 458 (29), this court, referring to specified evidence, said: "Defendant objected to said evidence upon the ground that the transaction was not included in the indictment. It will be noted that this plan of York to use his office of councilman to promote his private interest was in keeping with his general plans of operation as shown by the indictment, particularly count 3 thereof; and such evidence was admissible to show intent and motive. See *Frank* v. *State,* 141 *Ga.* 243 (80 S. E. 1016); *Williams* v. *State,* 152 *Ga.* 498, 521 (110 S. E. 286); *Chappell* v. *State,* 40 *Ga. App.* 502; *Goldberg* v. *State,* 20 *Ga. App.* 162 (2) (92 S. E. 957)." See

also *Hayes* v. *State*, 36 *Ga. App.* 668 (1 *d*) (137 S. E. 860). To show the relevancy of this evidence and the light it throws on the transaction under consideration, we call attention to the following testimony of R. J. Donaldson, who was attempting to sell an ambulance to the city, as set out in the 8th special ground: "I had been instructed to see Harry York and he would get the deal through. I told him it was listed at $4250, but I had told Mr. Trammell and Mr. Johnson that I would sell them the ambulance for $3500, giving the city $750 discount. He said, 'Come on and go over to the office.' I didn't know where he was going, but I went with him up to the Healey Building to the office of the Southeastern Brokerage Company, and he says, 'Mr. Donaldson, this is Mr. Jack White; he is my partner in the brokerage business;' and he says, 'Sit down and we will talk this matter over,' so we all sat down, and he says, 'The only way you can deliver the city the ambulance is to put the price back to $4250.' I says, 'But I have already told them I would take off $750.' He says, 'That don't matter. You put it back to $4250, and I will get the deal through, and when you get your voucher from the city and get your money you bring $750 up here and give.it to Mr. White. I am in the council and wouldn't like it to be known I had anything to do with it. *I don't want anybody to know I am getting anything out of the deal.*'"

■ The court did not err in giving the jury the following instructions, as alleged in special ground 13: "I instruct you, as an abstract matter of law, that it is not a violation of law for one who is not an official or a legal agent of the City of Atlanta to accept a reward or compensation for his individual efforts and influence through the giving of a reward or compensation in selling goods or equipment to the City of Atlanta. That would be otherwise, however, if the one who received it aided, counseled, or abetted with an official of the City of Atlanta, or if he was in conspiracy with an official of the City of Atlanta, and if the crime of bribery was committed as I have described it to you."

■ The evidence authorized the verdict, no reversible error of law is shown, and the court did not err in overruling the motion for a new trial.

*Judgment affirmed. Broyles, C. J., concurs. Bloodworth, J., absent on account of illness.*