L. H. CAPSHAW v. STATE.

No. A-9685.   June 19, 1940.

(104 P. 2d 282.)

Charles Hill Johns and J. B. Dudley, both of Oklahoma City, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Lewis Morris, Co. Atty., and Walter Marlin, Asst. Co. Atty., both of Oklahoma City, for defendant in error.

JONES, J.   An indictment was presented and filed in the district court of Oklahoma county against L. H. Capshaw, Frank Wilkins, and Ed W. Spivey, charging them with the offense of receiving a bribe; a severance was granted; the defendant L. H. Capshaw waived a trial by jury, was tried by the court, adjudged to be guilty and sentenced to serve a term of four years imprisonment in the state penitentiary, and has appealed.

The defendant Capshaw was a royalty broker in Oklahoma City. The particular offense charged herein alleged that the defendant, together with his codefendants Frank Wilkins, attorney for the board of education, and Ed W.

Spivey, a member of the board of education, received a bribe in the sum of $600 to procure a sale and transfer of certain royalty known as the Wheeler school royalty by the board of education of Oklahoma City to one Robert Dalgleish for the sum of $8,100.

This court in the case of Spivey v. State, 69 Okla. Cr. 397, 104 P. 2d 263, decided June 13, 1940, has passed on most of the legal propositions raised by this defendant in his brief, contrary to the contentions of the defendant.

In Spivey v. State, supra, we held that Spivey was an executive officer under the provisions of section 1907, O. S. 1931, 21 Okla. St. Ann. § 382, which was the statute under which this indictment was presented. We further held that, under the wording of our statute and in accordance with the construction which has been consistently placed thereon, the bribe givers were accomplices of the bribe receivers, and that the general rule as to the necessity for the corroboration of accomplice testimony would apply. That there was, however, sufficient independent evidence, aside from the testimony of the accomplice to sustain the conviction.

One of the issues raised in this case, which was not settled in Spivey v. State, supra, is the contention of the defendant that he, not being an officer, could not be charged in the same indictment with Ed Spivey, who was an officer of the Oklahoma City school district, to wit, a member of the school board, because the Oklahoma statutes set forth two distinct crimes:

(1) The giving of a bribe by a person not an officer.

(2) The receiving of a bribe by a person who is an officer.

The prosecution was conducted upon the theory that the defendant Capshaw was not a public officer, but that

he was a layman who acted conjointly and together with Spivey, who was a public officer, and Wilkins, and conspired with them, and as their agent and part of their general scheme, did ask for and receive a bribe to influence Spivey in his official conduct as a member of the Oklahoma City school board.

Section 1808, O. S. 1931, 21 Okla. St. Ann. § 172, provides:

"All persons concerned in the commission of crime, whether it be felony or misdemeanor, and whether they directly commit the act constituting the offense, or aid and abet in its commission, though not present, are principals."

In 8 Am. Jur. 896, under Bribery, it is stated:

" * * * A person may be guilty of a conspiracy to commit bribery, even though he could not, by reason of his status, commit bribery."

In 11 C. J. S., Bribery, § 5, p. 857, we find the same rule in slightly different language, to wit:

"A person who aids and abets another to bribe an officer in violation of law may be held equally guilty with his principal, regardless of whether he was actually present or not at the time the bribe was given. Likewise, one who aids, counsels, or conspires with an officer to procure a bribe may be guilty, as a principal, of the offense of asking or receiving a bribe."

In the case of People v. Anderson, 75 Cal. App. 365, 242 P. 906, 909, the District Court of Appeal of California had before it a case very similar to the instant case. In the Anderson Case the defendant, Moorewood, was a lawyer and private citizen, and he, acting for and on behalf of the chief of police and other officers, accepted a bribe to get certain criminal cases dismissed by the chief of police and to corruptly influence certain officers in their

duty relative thereto. Moorewood, the private citizen, made the same contention as is made by the defendant in this case. In disposing of that case, the District Court of Appeal of California used the following language:

"Appellant Morewood contends that, as section 68 of the Penal Code only refers to certain officers as being amenable to its provisions, and that as it is neither alleged nor proven that he was an officer of the class mentioned in said section of the Code, nor any officer whatever, he could not be found guilty of bribery as charged in the indictment; therefore the judgment against him cannot stand. It is true that as a private citizen he could not as a principal be guilty of the crime of bribery as defined by the above Code section. But in conjunction with one or more of the officers mentioned in said section of the Code, and as an accomplice of such officer, he could be guilty of the crime as defined by said section 68, Pen. Code, §§ 31 and 971; People v. Bartol, 24 Cal. App. 659, 142 P. 510; People v. Horn, 25 Cal. App. 583, 144 P. 641; Bishop v. State, 118 Ga. 799, 45 S. E. 614."

In the case of White v. State, 43 Ga. App. 748, 159 S. E. 897, it was held:

"Private individual who receives money to influence city council, may be guilty of bribery, if he aids, counsels, or conspires with city official."

In the case of People v. Coffey, 161 Cal. 433, 119 P. 901, 39 L. R. A., N. S., 704, it is stated:

"An intermediary representing one who desires to influence the action of a public board by bribery, who makes the bargain with the members and delivers their compensation, is an accomplice with one agreeing to receive and receiving the bribe, under a statute defining accomplices as all persons concerned in the commission of crime, whether they directly commit the act constituting the offense, or aid and abet in its commission, so that his uncorroborated testimony is not sufficient to convict the latter."

The California statute is identical with the Oklahoma Code in that it obliterated the common-law distinctions between principals in their different degrees and accessories, and declared that all persons concerned in the commission of a crime, whether it be felony or misdemeanor, and whether they directly commit the act constituting the offense or aid and abet in its commission, or not being present have advised and encouraged its commission, are principals.

By reason of the wording of our statute and the construction that has been uniformly placed thereon by this court, in connection with alleged violation of the law and under authority of the above entitled cases, we hold that the defendant, although a layman, could properly be charged and convicted of acting conjointly with a public officer in the offense of receiving a bribe, and that the defendant Capshaw, by reason of asking and soliciting a bribe to influence the defendant Spivey to vote for the delivery of the royalty deed to Dalgleish, did aid and abet the officer Spivey in the commission of the offense of bribery, and that he is guilty the same as the principal Spivey.

It is further urged by the defendant that the state has wholly failed to prove the corpus delicti. That the defendant is charged jointly with Spivey and Wilkins of the offense of receiving a bribe; that the gist of the offense is the receiving of a bribe by Spivey as a public officer to influence his official conduct. That the only proof of corpus delicti in the record is the extrajudicial statements of the defendant that he was receiving the money for the purpose of giving a bribe to Spivey and other members of the school board in order for the royalty transaction to be finally consummated with Dalgleish.

It is the law of this state that to establish the guilt of one accused of a criminal offense, it is necessary that two distinct propositions be proven: First, that a criminal act has been committed, usually designated as corpus delicti; second, that the guilt of such act attached to the particular person charged with the commission of the offense. Coppler v. State, 52 Okla. Cr. 275, 4 P. 2d 700.

We have also held that the corpus delicti in a criminal case cannot be established by the confession of the defendant alone. There must be independent evidence, either direct or circumstantial, of the corpus delicti before a conviction can be had. Cherry v. State, 33 Okla. Cr. 37, 241 P. 833; Blakemore v. State, 39 Okla. Cr. 355, 265 P. 152; Boggess v. State, 46 Okla. Cr. 283, 287 P. 764.

In this connection we have also held that it is always necessary, in proving a case against a defendant charged as being an accomplice, to show the culpability of the principal. There can be no accomplice until it has been shown that the principal committed the offense, and that the accomplice advised or abetted or furnished the means by which the crime was committed by the principal.

With these principles of law, definitely established, a review of the material parts of the testimony applicable thereto is herewith presented to see whether or not the state in the presentation of its proof fully met the requirements of the law. It must be borne in mind that at the conclusion of the state's case, the defendant demurred to the evidence; and after the same had been overruled, rested his case and based his argument upon the proposition that the evidence introduced by the state, together with the reasonable inferences to be deduced therefrom, is wholly insufficient to show that a crime as charged in the indictment had been committed.

The state introduced the testimony of 16 witnesses, several of whom were used by the state solely for the purpose of showing other bribery transactions in the sale of royalty owned by the board of education, in which the defendant Capshaw was involved. This testimony is admissible under the limitations as hereinafter outlined; but, of course, the defendant, if convicted herein, must be convicted on the proof that he committed the particular offense charged against him.

J. G. Stearley testified that he was during all of the time in question the clerk-business manager of the board of education of Oklahoma City. He identified the minutes of the board of education which showed the manner of the handling of the advertisement relative to the sales of royalty on what is known as the Northeast high school, the Webster, the Dewey, and the Wheeler royalty tracts. These minutes, which were introduced in evidence, show the number and amount of bids received for these respective tracts and the disposition made of each bid.

In this connection, attention is called to the fact that these minutes corroborate certain statements made by the defendant, Capshaw, to Chadwell, Dalgleish, and Pasquella in his negotiations with them towards the pay-off in connection with the Wheeler school royalty.

In the original bid of $6,610 placed by Chadwell through Pasquella, Capshaw came to them and told them that unless they could arrange to make a $1,600 pay-off to the members of the school board, their bid, which was more than $1,000 higher than any other bid which had been submitted, would be rejected along with all other bids. The minutes show that these bids were rejected, which rejection happened after Chadwell refused to make a side payment to Capshaw as requested by Capshaw.

After this bid had been rejected, Capshaw, according to the testimony of Chadwell, Dalgleish, and Pasquella, came to Chadwell's office and there made a deal with Chadwell whereby he would raise the $6,610 bid by a small amount and pay $1,000 on the side to the members of the school board. The minutes of January 3, 1938, disclose that the defendant Spivey made a motion, which was seconded by Mr. Johnson, that the bid of Chadwell which had been submitted in the name of Robert Dalgleish in the sum of $6,750 be accepted. This motion was voted down five to four; but the three members of the oil and gas committee, to wit: Spivey, Johnson, and Price, all voted to accept the Dalgleish bid.

Exhibit No. 9, which is the minutes of the meeting of January 6, 1938, shows the submission of a bid in the sum of $8,000 for the Wheeler royalty by H. S. Brimm. Upon a motion being made by the defendant Spivey, this bid was referred to the oil and gas committee.

Exhibit No. 10, which was the minutes of the meeting of Saturday, January 8, 1938, shows the receiving of a bid from Robert Dalgleish for $8,100, and a motion by Mr. Spivey that the bid he accepted and the sale be made provided no higher bid is received and subject to the approval of the transfer papers by the board's attorney.

Various other minutes were identified and received in evidence in connection with the sale of royalty under the Dewey and Webster school tracts. The details of these minutes will not be set forth at length herein, but it is sufficient to say that these minutes corroborate the testimony of the witnesses concerning the transactions leading up to the sale of the royalty interests under those tracts.

A. Ben Chadwell testified that he was a royalty broker in Oklahoma City; that he was in California at the time

of the advertisement by the board of education of the notice of proposed sale of the royalty under the Wheeler school tract; that he prepared a bid in the name of George Pasquella for $6,610 and filed it with the school board; that this sum was more than $1,000 higher than any other bid which had been received by the school board for that tract; that he returned from California on December 11th to Oklahoma City; that after this bid was submitted, it, along with all other bids, was referred to the oil and gas committee; that the next day he was approached by the defendant Capshaw with the proposition that he pay Capshaw $1,600, which Capshaw said was to be used in making payment to members of the school board for the purpose of getting the bid of Pasquella approved; that he refused to make this side payment, and Capshaw stated that if he didn't all bids would be rejected; that the bids later were rejected; that Capshaw came to him again and suggested that if he would increase the bid by a small sum and place it in the name of another man and agree to pay $1,000 as side money to Capshaw for the members of the board of education, the bid would be approved and the transfer of the royalty made to him; that he agreed to this deal and submitted a bid in the sum of $6,750 in the name of Robert Dalgleish; that at about that time a man by the name of W. H. Harding submitted a bid of $7,750 for this royalty; that Capshaw told him that he would get Harding to withdraw the bid, and get the school board to allow the bid to be withdrawn and the check which had been deposited by Harding as earnest money to be returned to him; that the bid of Harding was withdrawn the next day, and his check returned to him by the school board. (The minutes of the board corroborate this statement.) That on January 6, 1938, a man by the name of Brimm submitted a bid in the sum of $8,000 for the Wheeler royalty; that the de-

fendant Capshaw came to him at that time and stated that since the figures had gotten so high, he realized that it would be impossible for him to pay any side money and be the highest bidder; that for that reason he, the defendant Capshaw, was releasing him from any agreement to pay side money to secure this royalty, but for him to go ahead and make whatever bid he could afford to make in order to secure the tract; that in his opinion, if he would bid $8,100, the board would accept the bid; that he told Capshaw at that time that he would place a bid for $8,100; that the next morning he was called by Ed Spivey, the codefendant, over the telephone, in which conversation Spivey informed him that he had learned he intended to submit a bid in the sum of $8,100 and that if that were true the school board was in session and was ready to accept the bid; that thereupon he wrote out a bid in longhand in the amount of $8,100 and submitted it to the board in the name of Robert Dalgleish; that he was informed about 11:15 a. m. on Saturday that his bid had been accepted, and he accordingly prepared a deed for execution by the board of education, had the same approved by Frank Wilkins, attorney for the school board, and executed by Otto Rose as president of the school board; that when he took the deed to Mr. Stearley, clerk of the board, it was too late to get into the bank to secure the balance of the money to be paid for this royalty and it was agreed at that time between him and Mr. Stearley that the deed would be left with Mr. Stearley until Monday morning, at which time he, Chadwell, would secure the balance of the money from the bank and deliver it to Stearley for the deed; that the following morning (Sunday) he was again approached by the defendant Capshaw, who related that even though the board had voted to accept his bid, the deed would not be delivered to him until

he had given the defendant Capshaw $600 to be used as pay-off money to pay members of the school board, including the defendant Ed Spivey; that he informed Capshaw at that time that he had paid all for the royalty that he could afford to pay, and would not pay one cent of bribery money to him or anybody else to secure the deed; that on Monday morning he took the balance of the purchase price of the royalty to Mr. Stearley, the clerk, and tendered it to Mr. Stearley, who then informed him that Mr. Wilkins had called for the deed that morning to make a further check of some of its provisions; that he called Wilkins about the matter, and Wilkins stated that he was making a further check of the deed and would let him know when he had finished his examination; that he was repeatedly approached by Capshaw during this time, who insisted that he make an additional $600 pay-off to Capshaw for the members of the board before he could procure a delivery of the deed; that he employed an attorney, Kenneth McAfee, to assist him in securing the deed; that McAfee consulted Mr. Stearley, Mr. Wilkins, Mr. Spivey, and Mr. Rose repeatedly, trying to secure a delivery of the deed; but that he was advised by Mr. Spivey that the deed was being held up because they were expecting a higher bid; that after trying without success for four days to secure delivery of the deed, he finally agreed to pay Capshaw the $600 which he was demanding; that he procured four one hundred dollar bills and four fifty dollar bills and placed them in an envelope. That he met Capshaw there at his (Chadwell's) office in the presence of George Pasquella and Robert Dalgleish, and discussed the method of completing the transaction and securing the delivery of the deed; that it was there agreed that the envelope with the $600 in it would be left with Pasquella, who was to hold it, and as quickly as the deed had been delivered

to him in Dalgleish, that the envelope with the money in it be delivered to Capshaw; that when this method of handling the transaction was finally agreed upon between him and Capshaw, Capshaw called Frank Wilkins over the telephone and informed him that the deal had been closed and for him to call Stearley and instruct him to deliver the deed to Dalgleish;. that he and Dalgleish then went to the clerk's office, were delivered the deed by Mr. Stearley, and returned to where Pasquella and the defendant Capshaw were waiting; that they there informed them that they had received the deed, and Pasquella handed the defendant Capshaw the envelope with the $600 in it at that time; that Capshaw came to him a day or so later, on two different occasions, and insisted that he give him more money for the reason that he did not secure anything out of the $600 which had been given to him as all of it had been used on members of the school board.

Robert Dalgleish and George Pasquella detailed the transaction in substance the same as related by Chadwell.

Kenneth McAfee, the attorney, testified that he was employed by Chadwell to help secure delivery of the deed. He related the conversations which he had with Wilkins, Spivey, and Rose concerning the delay in the delivery of the deed; that Rose referred him to Spivey; and Spivey said the matter was being held up because they were expecting a higher bid.

Various other witnesses, including other royalty brokers in Oklahoma City and other individuals, testified concerning other royalty transactions had with the board of education, in which the defendant Capshaw, acted as go-between. On one occasion three of the brokers, together with the defendant Capshaw, met at Frank Wilkins' house and had a bitter argument over the proposed pay-

off in connection with the Webster school royalty. All of these transactions disclose the close, intimate connection between the defendant Capshaw and his codefendants Wilkins and Spivey.

The testimony of Lewis Morris shows that the defendant Capshaw admitted receiving $600 from Chadwell, but he claimed it was a commission.

J. G. Stearley, the clerk, upon being recalled, testified that Chadwell came to him several times between January 8th and 14th and asked for delivery of the deed to him; that he called Ed Spivey on each of these occasions, and Spivey told him to not release the deed until he was ordered to do so by either himself or Mr. Price, another member of the oil and gas committee.

It can be seen from the foregoing that there is no merit to the contention of the defendant that there is no proof of the corpus delicti other than the extrajudicial statements of the defendant Capshaw. When we consider the minutes of the board of education, which bear out in detail everything which Capshaw said would happen, the identification of the checks by the bank officers, which were used to secure the bribe money, together with statements made by Wilkins and Spivey, we find not only that the corpus delicti has been proven, but there is sufficient independent corroboration of the testimony of the accomplices Chadwell, Pasquella, and Dalgleish to sustain the conviction of the defendant. This court has repeatedly held that the corpus delicti may be proven by circumstantial evidence.

The defendant presents the proposition that the court erred in permitting the state over the defendant's objection to introduce incompetent, irrelevant and immaterial testimony of other alleged offenses by members of the board

of education in the absence of the defendant, which related to matters where there was no possible connection with the defendant. Other similar offenses which happened about the same time and with which the defendant was connected were admissible to prove the general scheme or plan or the intent of the defendants. Spivey v. State, supra. If no connection with the defendant is shown, the testimony with relation to other offenses should not have been admitted. The proof shows direct connection of the defendant with the Dewey and Webster royalty transactions in which bribes were given. No connection with the Northeast high school royalty transaction was shown.

In this case a jury was waived, and the cause was tried to the court. The defendant Spivey was given ten years by a jury; the defendant Wilkins was given seven years by a jury.

The court herein was very fair to the defendant Capshaw. The presumption is that he did not consider the evidence which was inadmissible, but considered only that which had a material bearing, on the issues of the case. The sentence of four years given by the court does not appear to be the result of any prejudice towards the defendant; but, on the other hand, if consideration is given to the sentences meted out to the codefendants Spivey and Wilkins by a jury, the court was very lenient with Capshaw.

It is essential to the orderly administration of the affairs of our government that those in public office obey the laws. Confidence in our government can only be maintained by definitely administering stern and drastic punishment to those public officials who betray their trust. We do not mean by this that courts and juries of this state should go into a hysteria and inflict punishment

where the evidence does not justify it. The great majority of the officials of the various municipalities of this state are men of high character, possessed of honesty and integrity. We realize it is easy for accusations against people in public office to be wrongfully made by disappointed or revengeful people. But where the proof of guilt is clear, as in this case, the guilty ones should be taught that the rights of our citizens cannot be corruptly tampered with and bargained away.

Finding no material error in the record, the judgment is accordingly affirmed.

DOYLE, P. J., and BAREFOOT, J., concur.